¶ 38. I am authorized to state that Chief Justice Reiber joins in this concurrence.

2015 VT 56

## State of Vermont v. Robert Vezina

[121 A.3d 1195]

No. 14-021

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Morris, Supr. J. (Ret.), Specially Assigned**

Opinion Filed April 10, 2015

*Rhonda F. Sheffield,* Windsor County Deputy State's Attorney, White River Junction, for Plaintiff-Appellee.

*Matthew F. Valerio,* Defender General, and *Marshall Pahl,* Appellate Defender, Montpelier, for Defendant-Appellant.

¶ 1. **Robinson, J.** Defendant Robert Vezina challenges a restitution order for various items of musical equipment, arguing the trial court erred by concluding that certain cymbals that had been stolen but then returned in a degraded but functional condition were worthless; by awarding restitution based on the subjective value of the cymbals to the victim; and by ordering defendant to pay restitution without making a finding on his ability to pay. We

affirm on the first two issues, and reverse and remand for further proceedings concerning defendant's ability to pay.

¶ 2. On September 20, 2013, defendant pleaded guilty in the Superior Court, Windsor Unit, Criminal Division, to one count of petit larceny, 13 V.S.A. § 2502, in connection with the theft of seven pieces of musical equipment in July 2012. Defendant's sentence included a restitution order.[1] After a restitution hearing, the trial court made the following findings, which are supported by substantial evidence in the record. The equipment's owner collects rare drumming equipment, much of which is no longer being produced. The owner currently has 538 pieces in his collection, including 133 Zildjian drum cymbals. The logo on a cymbal is an important component of its value. Damage to cymbals decreases their value. The trial court summarized the status of each of the seven items at issue:

- *Sonor Force Boom Stand* — [The owner] purchased this new stand for $133 from a German company. The company does not make this stand any more. A portion of this piece was returned to him, but pieces are missing.

- *Gibraltar Rod Cymbal Attachment* — [The owner] purchased this item new for $41.50. This is a stand which is a mount for a cymbal. This was returned to [the owner] but is missing "toppers, sleeves and a wing nut."

- *A Series 10" Extra Thin Splash Zildjian Cymbal* — [The owner] purchased this cymbal new for $191. It is a discontinued item. This was returned to [the owner], but in a damaged state. This cymbal was cleaned by Defendant with a harsh, abrasive cleaner and materials were rubbed into the grooves of the cymbal. This affects the value of the cymbal and its performance.

---

[1] Defendant entered his plea with the understanding and agreement that the State would seek restitution in excess of $900. 13 V.S.A. § 7043(e)(3) ("An order of restitution may require the offender to pay restitution for an offense for which the offender was not convicted if the offender knowingly and voluntarily executes a plea agreement which provides that the offender pay restitution for that offense."). Put differently, under the plea agreement, defendant pleaded guilty only to petit larceny, but was subject to a restitution order for grand larceny. Compare *id.* § 2052, with *id.* § 2051.

This cymbal is presently at the Springfield Police Department.

- *A Series 6" Splash Custom Cymbal* — [The owner] purchased this cymbal new for $136.00. This cymbal had a rare stamp on it. This stamp is not put on cymbals any more, so it has a value as a collector['s] item. This cymbal was not returned to [the owner].

- *A Series 10" EFX Cymbal* — [The owner] purchased this cymbal new for $198.00. It is a rare, discontinued model which has not been made since 2002. This is missing and has not been returned to [the owner] although he believes he has seen it at a music store.

- *A Custom 10" Splash Cymbal* — [The owner] purchased this cymbal new for $206. It has been returned to him, but in a damaged state. The damage is [the same as described above in connection with the A Series 10" Extra Thin Splash Zildjian Cymbal].

- *19" Zildjian Custom Rock Crash* — [The owner] purchased this symbol new for $427.00. It is [a] rare, discontinued cymbal. It was damaged similarly to the cymbals noted . . . above. In addition, the logo has been polished off this cymbal and there are nicks, dents, and edge damage to the cymbal. Defendant agrees that he played this cymbal and wiped off the label.

¶ 3. The court further found that the items which were damaged or stolen were collector's items, for which there is no "blue book" value as there is for automobiles. They were in "impeccable" condition before the larceny, as the owner did not let others play or touch his drum equipment. Because they are no longer being produced, most of the items in the owner's collection, when they were intact, were probably *more* valuable than when the owner originally purchased them. The cymbals that were damaged are no longer valuable collector's items. The total amount that the owner originally paid for the equipment at issue was $1332.

¶ 4. Defendant produced evidence of various items of equipment for sale on eBay for prices that were lower than the original purchase price for the similar items at issue in the restitution hearing. The trial court concluded that a proposed replacement

for the owner's damaged A Custom 10″ Splash cymbal for $124.95 was the only one of the items identified by defendant that is likely comparable to one of the items at issue in the restitution hearing.

¶ 5. The trial court also found that "[t]here was no evidence presented showing that Defendant does not have the ability to pay restitution."

¶ 6. Based on these findings, the trial court calculated the owner's material loss as his original purchase price for the items, with the exception of the A Custom 10″ Splash cymbal, which the trial court valued at $124.95. The total restitution order was for $1251.

¶ 7. Defendant appealed, arguing that the trial court erred in awarding restitution as if the cymbals that were returned, and still functional, had not been returned; that the trial court improperly awarded restitution on the basis of the cymbals' subjective value to the owner rather than on the material loss suffered; and that the trial court erred in ordering defendant to pay restitution without making a finding that he has the ability to pay.

¶ 8. ■ "The trial court has discretion in determining the amount of restitution, and only a reasonable certainty of estimated loss is required." *State v. Driscoll*, 2008 VT 101, ¶ 8, 184 Vt. 381, 964 A.2d 1172. "We review restitution orders for an abuse of discretion, and interpret controlling statutes de novo." *State v. Gorton*, 2014 VT 1, ¶ 8, 195 Vt. 460, 90 A.3d 901.

¶ 9. ■ Vermont's criminal-restitution statute mandates that restitution "be considered in every case in which a victim of a crime . . . has suffered a material loss." 13 V.S.A. § 7043(a)(1). " '[M]aterial loss' means uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses." *Id.* § 7043(a)(2); see also *State v. Jarvis*, 146 Vt. 636, 638-39, 509 A.2d 1005, 1006 (1986) (noting that "only liqui-dated amounts which are easily ascertained and measured are recoverable under the legislative [restitution] scheme," and that damages "that are not readily ascertainable," including pain and suffering and emotional trauma, are not recoverable).

¶ 10. ■ Generally, diminution in fair market value is the proper measure of restitution for material losses of personal property. *State v. Curtis*, 140 Vt. 621, 622, 443 A.2d 454, 455 (1982) (per

curiam); *Driscoll*, 2008 VT 101, ¶ 11 (affirming restitution order for market value that owner would have received if two lost deer which escaped due to defendant's actions had been sold in an arm's-length transaction). However, we have affirmed a restitution order based on the replacement cost of items that were damaged or destroyed where the items were of modest cost and had no readily ascertainable market value. *State v. Tetrault*, 2012 VT 51, ¶ 13, 192 Vt. 616, 54 A.3d 146 (mem.) ("[Although] fair market value is the proper measure of damages for items with a readily ascertainable value, there is no 'blue book' for used toasters or microwaves. A victim of a home invasion should not have to visit local thrift stores or pore through the classifieds to determine the value of a used blender."). We have recognized that because of the difficulty of valuation, some restitution awards "necessarily involve[ ] an approximation." *Driscoll*, 2008 VT 101, ¶ 14.

¶ 11. With these principles in mind, we turn to defendant's first challenge — that by awarding the full purchase price of the used-but-returned items, the trial court essentially concluded that the returned equipment had no value, even though the returned cymbals were functional. We conclude that the trial court's approach is supported by the evidence.

¶ 12. ■ The boom stand and cymbal attachment were both only partially returned; pieces were missing from both.[2] The boom stand is no longer manufactured, and with various pieces missing, it does not have value as a collector's item. The total value ascribed to an intact Gibraltar Rod Cymbal Attachment is only $41.50. The trial court did not abuse its discretion in declining to ascribe significant value to the returned portions of either of these items.

¶ 13. The cymbals that were returned to the owner were functional as percussive instruments, but the trial court found that their primary value did not lie in their percussive qualities. They were part of a collector's set, and were collector's items in their own right. Defendant's erasure of the logos greatly diminished their value. Dirt filled the grooves of the cymbals. And the 19" Zildjian Custom Rock Crash had nicks, dents, and edge damage. Defendant presented no evidence of the value of unlabeled, dirty, nicked, and dented cymbals. Moreover, the trial court expressly

---

[2] Defendant disputes that a portion of the boom stand was taken but not returned, but the trial court's finding on this point is supported by the owner's testimony.

found that the value of the cymbals at the time of defendant's larceny was likely *greater* than the original purchase price upon which the restitution order was based. Given this evidence, the trial court's decision not to offset the value of the stolen equipment by their value at the time they were returned was well within its discretion.

¶ 14. ■ ■ Defendant next argues that the trial court improperly awarded damages based on the subjective value of the items to the owner. Defendant points to the owner's testimony about the personal value to him of the items in question, and statements by the trial court acknowledging the owner's intangible loss. For example, the trial court noted, "It is clear to the Court that these items mean a great deal to [the owner], not for their financial value, but due to his love of drumming . . . . His testimony and demeanor on the stand revealed a victim who, in his mind, can really never be made whole, due to acts of Defendant." We agree that the subjective value, as opposed to market value, of an item that has an ascertainable market value is not generally a proper basis for restitution. *Curtis*, 140 Vt. at 622, 443 A.2d at 455 (holding that general measure of restitution is market value). But we reject the suggestion that the trial court in this case relied on the subjective value of the items to the owner in assessing restitution.

¶ 15. In fashioning its restitution order, the trial court considered the original purchase price of the items, the fact that the owner kept his equipment in mint condition, and the fact that the values at the time of the larceny of nearly all of the items at issue were likely higher than the original purchase price. These are all objective, market-based considerations. During the hearing, when the State sought to elicit testimony from the owner about his level of passion for collecting and owning musical instruments, the trial court sustained defendant's objection on the ground that the owner's pain and suffering were not relevant considerations. The fact that the items at issue are collector's items does not alter the analysis. The trial court did not focus solely on the value of the items to the owner, but on the value of the items in the market more broadly — a value that reflects their status as collectibles. The fact that the trial court acknowledged the owner's personal sense of loss, and his personal devotion to the items at issue, does not transform the character of its actual analysis.

¶ 16. Nor did the trial court extend our ruling in *State v. Tetrault*, as defendant argues. In *Tetrault*, we allowed a restitution award based on the modest replacement cost of small household goods and appliances which were damaged or destroyed when the defendant broke into a camp, even though the cost of purchasing similar new items likely exceeded the value of the used goods that had been in the cabin. 2012 VT 51, ¶ 13. In this case, the trial court discussed the possibility of a replacement-cost-based restitution award, noting that restitution on a replacement-cost basis would likely be higher than the restitution actually awarded in this case, but did not base its restitution award on a replacement-cost analysis. Although the trial court discussed *Tetrault* in its opinion, it relied on a traditional market-value analysis rather than a replacement-cost analysis in determining the material loss suffered by the owner. It considered the original purchase price of the items at issue (itself a market-based figure), as well as the items' mint condition, and concluded that the value of the items at issue had likely risen since the original purchase because the products had been discontinued. On this basis, the court concluded that the amount that it ordered defendant to pay in its purchase price-based restitution order was equal to or perhaps even lower than the actual market value of the victim's loss.[3] The court also adjusted the restitution award for the one item for which it was persuaded that defendant's contemporaneous market-based evidence — an eBay offer for the same cymbals new — was probative. Given these facts and the reality that restitution orders often "necessarily involve[ ] . . . approximation," *Driscoll*, 2008 VT 101, ¶ 14, we find no error in the court's calculation of the restitution award.

¶ 17. ▪ ▪ Finally, defendant argues that the trial court erred by entering a restitution order that ordered him to pay restitution immediately without first making a finding on the defendant's ability to pay. The trial court noted in its written decision that "[t]here was no evidence presented showing that Defendant does not have the ability to pay restitution," and the form restitution judgment order signed by the trial court contains a preprinted finding that defendant has the current or reasonably foreseeable ability to make the payments. By statute, "[i]n awarding restitu-

---

[3] This finding distinguishes this case from *Tetrault*, in which the value of the used goods at issue undisputedly had fallen since the time of purchase.

tion, the Court shall make findings with respect to . . . [t]he offender's current ability to pay restitution, based on all financial information available to the Court." 13 V.S.A. § 7043(d)(2). In this case, the record is devoid of evidence to support a finding of current ability to pay the restitution judgment. The State joins with defendant in arguing that the trial court erred on this point and requests that this Court remand the case to the trial court in order to determine defendant's ability to pay any restitution ordered.[4] *State v. Sausville*, 151 Vt. 120, 121, 557 A.2d 502, 503 (1989) (citing *Curtis*, 140 Vt. at 623, 443 A.2d at 456) (rejecting argument that defendant in restitution case had a duty to preserve issue of his inability to pay and stating that when "defendant does not take the stand on his own behalf, it will be necessary for the State to establish in some other manner defendant's ability to pay restitution"). Because the parties agree on this point, we vacate the trial court's order requiring defendant to pay the restitution judgment immediately and remand for further proceedings concerning defendant's current ability to pay.

¶ 18. Justice Dooley, writing in dissent, *post*, ¶¶ 26-35, argues that notwithstanding the State's confession of error and request that we remand the case, we should affirm. He argues first that the defendant's failure to raise the issue of his ability to pay below precludes him from raising the issue on appeal. *Post*, ¶ 27. He further suggests that defendant, rather than the State, bears the burden of producing evidence concerning his ability to pay, so that a restitution order can stand in the absence of any evidence on the subject. *Post*, ¶¶ 31-33. In order to reach this outcome, Justice Dooley urges us to overrule our decades-old precedent in *Sausville*, which we recently reaffirmed in *State v. Kenvin*, 2011 VT 123, ¶¶ 16-17, 191 Vt. 30, 38 A.3d 26 (reaffirming that "[n]o preservation is required" on ability-to-pay issue and that "it is the State's burden to establish defendant's ability to pay if defendant does not offer evidence on his own behalf"), *overruled on other grounds by State v. Aubuchon*, 2014 VT 12, ¶ 21, 195 Vt. 571, 90 A.3d 914.

---

[4] Although the absence of evidence of defendant's current ability to pay arguably compromises the trial court's order for immediate payment of the restitution judgment, the ability-to-pay finding is not an essential finding to the determination of the victim's material loss. Thus, the State's failure of proof on this point does not compromise the trial court's judgment against defendant for that loss. See 13 V.S.A. § 7043(d) (enumerating material loss, (d)(1), and ability to pay, (d)(2), as distinct factors).

¶ 19. Justice Skoglund, dissenting separately, does not outright advocate that we overrule any precedents, but by upholding the trial court's finding of ability to pay in the absence of any evidence on the subject, her dissent implicitly endorses the same shift in burden of proof, or at least burden of production, advocated by Justice Dooley's dissent. Judge Morris, concurring separately, responds to some points raised in Justice Dooley's dissent.

¶ 20. ▮ Given the circumstances of this appeal, we opt not to weigh in on this subject at all. We agree that this Court has the authority to affirm the trial court's judgment on grounds not relied upon below and not briefed to us. E.g., *Fuller v. City of Rutland*, 122 Vt. 284, 288, 171 A.2d 58, 60 (1961). However, given that the State has affirmatively confessed error and joined defendant's request for a remand to address the ability-to-pay issue, we decline the dissent's invitation to address our longstanding precedent — one way or the other — without the benefit of any briefing or argument on the issue.[5] When the State has confessed error, this Court's usual past practice has been to reverse and remand on the error that has been confessed without discussion.[6]

---

[5] See, e.g., *Harris v. Town of Waltham*, 158 Vt. 477, 485, 613 A.2d 696, 700 (1992) (Allen, C.J., dissenting) (noting that "[a] principal reason for not considering issues not presented by the parties at trial or in their briefs is the great risk of deciding important issues without hearing reasoned arguments on both sides of a question"), *Favreau v. Miller*, 156 Vt. 222, 233, 591 A.2d 68, 75 (1991) (Dooley, J., dissenting) ("I would not decide whether to abolish the control test. We have not had the benefit of briefing and argument on that issue since the parties agreed that control was unnecessary and that is the law of this case.").

[6] See, e.g., *State v. Campanelli*, 142 Vt. 362, 363, 454 A.2d 1248, 1249 (1982) ("On brief and during oral argument, the State confessed error in one of the convictions . . . . We therefore reverse the judgment and enter a judgment of acquittal on that count."); *Gilson v. Gilson*, 139 Vt. 653, 653, 427 A.2d 383, 383 (1981) (mem.) (one-line order reading: "Parties having confessed error, cause reversed and remanded . . . ."); *State v. Sieglinger*, 138 Vt. 654, 654, 423 A.2d 1220, 1220 (1980) (mem.) (one-line order reading: "The State having confessed error in this cause, the judgment below is reversed and the cause remanded."); *State v Bliss*, 133 Vt. 324, 325, 340 A.2d 76, 76 (1975) (per curiam) ("The State has confessed error, and a new trial must be had."); see also *Lawson v. People*, 165 P. 771, 771-72 (Colo. 1917) (noting "it appears to have been the uniform practice of this court to reverse the case upon [the attorney general's] confession of error without giving it further consideration," and that court will only comment further in exceptional circumstances when elaboration would be useful).

¶ 21. The argument against affirming notwithstanding the State's concession and the lack of briefing on the issue is particularly strong in this case because a necessary predicate to affirmance is overruling a longstanding, and recently reaffirmed, precedent of this Court. See *O'Connor v. City of Rutland*, 172 Vt. 570, 570, 772 A.2d 551, 552 (2001) (mem.) ("[A]lthough we are not 'slavish adherents'" to doctrine of stare decisis, "neither do we lightly overturn recent precedent."). For these reasons, we decline to address, in this case, the questions raised by Justice Dooley's and Justice Skoglund's dissenting opinions and Judge Morris's concurring opinion.

*Reversed and remanded for a determination of defendant's ability to pay restitution; affirmed in all other respects.*

¶ 22. **Morris, Supr. J. (Ret.),** Specially Assigned, concurring. I agree fully with the majority's holdings both with respect to the determination of the restitution sum, and the remand for further proceedings on defendant's ability to pay restitution. Given the State's concession of error and the lack of argument on the issue, I agree that the proper course is to remand and leave for another day whether to overrule prior court rulings as advocated by Justice Dooley's dissent. I write separately to clarify that the issue raised by the dissent regarding how the court can adduce evidence on ability to pay may be fully and fairly resolved in a manner consistent with the existing statutes, and inherent judicial authority in the enforcement of lawful judgments, including those for payment of restitution in criminal cases.

¶ 23. The statute clearly does not prohibit calling of the defendant to offer testimony or other evidence to establish a record for finding as to ability to pay. To the contrary, the statute envisions that defendant will provide financial information, specifically stating that the court shall make its findings as to ability to pay "based on all financial information available to the Court, *including information provided by the offender.*" 13 V.S.A. § 7043(d)(2) (emphasis added).[7] Except as to perjury or false swearing, there are no incrimination issues, nor any confrontation issues presented in the State either calling the defendant as a

---

[7] This section of the statute was amended by the Legislature in 2005, adding the word "all" preceding "financial" and substituting "available to the court, including information provided by the offender" for the phrase "which the defendant has filed with the court." 2005, No. 51, § 5.

witness, or providing documentary evidence as to ability to pay. Further, the court may directly inquire as to defendant's financial status; this is akin to requiring an affidavit for review of public defender eligibility, or supplemental examination on the record to resolve questions as to financial affidavit contents. In fact, judges inquire all the time as to a defendant's employment, earnings, or financial status in sentencing proceedings, judge-to-defendant, or in many and various financial-disclosure and show-cause hearings in the civil division. A defendant's financial circumstances are a routine subject of inquiry and disclosure in presentence investigation interviews. Such inquiry is fully consistent with the statute and with the majority opinion in *State v. Morse*, 2014 VT 84, ¶¶ 11-19, 197 Vt. 495, 106 A.3d 902, recognizing that the rules of evidence are inapplicable, and less formal rules applicable, in restitution proceedings in contrast to those applicable in criminal trials.[8]

¶ 24. Justice Dooley's dissent urges that we presently overrule the holdings in *Sausville*, 151 Vt. 120, 557 A.2d 502,[9] and *State v. Kenvin*, 2011 VT 123, 191 Vt. 30, 38 A.3d 26, *overruled on other grounds by State v. Aubuchon*, 2014 VT 12, 195 Vt. 571, 90 A.3d 914.[10] In my assessment of the case circumstances, this is not necessary and is better left to another appellate day. In an

---

[8] Assuming that currently the State bears the burden of persuasion on the issue of a defendant's ability to pay restitution, and that inability to pay is not an affirmative defense, I do not construe the dicta in *State v. Sausville*, 151 Vt. 120, 121, 557 A.2d 502, 503 (1989), as to the means of production of evidence — "If defendant does not take the stand on his own behalf, it will be necessary for the State to establish in some other manner defendant's ability to pay restitution" — to categorically prohibit the State or the court examining the defendant, or the State securing of ability-to-pay evidence by other means. If this were indeed the case, defendants could simply thwart the issuance of any restitution payment order by electing not to testify or otherwise proffer evidence in restitution hearings, effectively "slamming the door" on payment obligation, a result contrary to the intent, and as I see it, the express provision of the statutes.

[9] In *Sausville*, this Court essentially rejected the State's argument that by entering into a plea agreement to pay restitution, the defendant waived his ability to challenge ability to pay. See also *State v. Baker*, 2010 VT 109, ¶ 8, 189 Vt. 543, 12 A.3d 545 (mem.) (citing *Sausville* as holding that defendant does not waive issue of ability to pay by agreeing to restitution in a plea agreement).

[10] *Kenvin* reversed a restitution payment order where the court failed to make any findings as to the defendant's ability to pay. 2011 VT 123, ¶¶ 16-17. On the issue of preservation, as both *Sausville* and *Kenvin* make clear, the bases for reversal were the failures of the trial courts to make any findings at all as to ability to pay, contrary to the requirement of the statute.

appropriate case, a majority of this Court may yet determine to expressly overrule *Sausville* and *Kenvin* and establish inability to pay as an affirmative defense, as well as adopt clearer standards for preservation. Alternatively, the same result may be achieved via judicial rulemaking pursuant to constitutional authority, or by legislative enactment.

¶ 25. There was scant, if any, treatment on the record below of the issues of allocation of the burden of proof on ability to pay, or preservation of error. The State has confessed error, and we are without the benefit of reasoned development and argument on appeal of these significant issues. For these reasons, I concur in the majority opinion, affirming the restitution judgment order and remanding for further proceedings on the issue of defendant's ability to pay restitution.

¶ 26. **Dooley, J.,** dissenting. I concurred in *State v. Morse*, 2014 VT 84, ¶¶ 25-29, 197 Vt. 495, 106 A.3d 902, because I believe that determination and assessment of restitution awards is crippled by the absence of effective procedural rules to regularize how restitution requests are considered. For similar reasons, I dissent here.[11]

¶ 27. There never was any question in this case as to what the victim claimed was stolen or damaged and what value the victim assigned to the items involved. The police affidavit stated the items taken were valued at $1332.50. Defendant knew in detail what the victim was seeking because defense counsel took the victim's deposition. The trial court's findings state that the victim was seeking restitution in that amount. Despite an evidentiary hearing that stretched over two days, and in which defendant testified, there never was a claim by defendant that he was unable to pay the amount the State sought. Nor, after the State rested, did defendant move for an order of no restitution because the State failed to put on any evidence of his ability to pay the amount that the State sought, although defendant claims on appeal that the State has the obligation to provide that evidence.

---

[11] I recognize that the State in this case has confessed error and not contested defendant's argument that the trial court erred with respect to the ability to pay. In doing so, the State has recognized that decisions of this Court require that result. We may, however, affirm on any ground, even if not raised by the party whose position is favored by our action, and this dissent urges that we overrule the governing precedent to reach that result.

Facing a record of defendant's total silence on the issue, the court found that "[t]here was no evidence presented showing that Defendant does not have the ability to pay restitution." In its judgment, the court found defendant "has the current ability or reasonably foreseeable ability to make the payment(s)" and ordered immediate payment of $1251.45. We should affirm that decision.

¶ 28. I acknowledge that the governing statute states that in awarding restitution "the Court shall make findings with respect to . . . [t]he offender's current ability to pay restitution, based on all information available to the Court, including information provided by the offender." 13 V.S.A. § 7043(d)(2); see also 28 V.S.A. § 252(b)(6) (providing that court may impose restitution as condition of probation in amount "which shall not exceed an amount the defendant can or will be able to pay"). The court did exactly what was required by the statute, given that there was no information on ability to pay presented.

¶ 29. The problem, in my judgment, is not the statute but how this Court has interpreted the statute. In *State v. Sausville*, 151 Vt. 120, 557 A.2d 502 (1989), over a dissent that the defendant failed to preserve the issue, this Court reversed a restitution award because the trial court made no findings that the defendant had the ability to pay the restitution award. *Id.* at 121, 557 A.2d at 503. The decision gives no explanation for dispensing with preservation, except that the statute requires findings on the defendant's ability to pay. When *Sausville* was decided, the decision was unusual in not requiring preservation for a direct appeal to this Court. Now it is virtually unique. Certainly the rationale that preservation is not required where the issue involves a requirement to make findings has been rejected. See, e.g., *State v. Cleary*, 2003 VT 9, ¶¶ 16-17, 175 Vt. 142, 824 A.2d 509 (requiring preservation, absent plain error, for direct appeal of Vermont Rule of Criminal Procedure 11 violations, involving failure to render required advice and information to defendant and lack of findings). We should explicitly overrule *Sausville* on this point. See *State v. King*, 204 P.3d 585, 599 (Kan. 2009) (holding that claim that trial court failed to make findings on ability to pay was not raised below and therefore was not preserved for appeal).

¶ 30. Even if we do not overrule *Sausville*, we should distinguish it here. Unlike *Sausville*, this is a case in which defendant knew exactly the amount of restitution the State and victim

sought, and the court awarded an amount close to the demand. Also, unlike *Sausville*, there was an evidentiary hearing with testimony, and defendant had the opportunity after the State presented its testimony to claim that the State's presentation was deficient. Further, defendant testified and could have addressed his ability to pay the restitution judgment the State sought. There is no valid reason here for lack of preservation.

¶ 31. I recognize that in the absence of preservation, we would still reverse if we found plain error. I would not find plain error on this record. Defendant never has alleged that he does not have the ability to pay, relying on the technicality that there is no finding of ability to pay. In the absence of such a claim, we cannot find prejudice to conclude there was plain error.

¶ 32. There is a second, and more important, reason to overrule *Sausville*. It held:

> Defendant's failure to take the stand does not obviate the court's duty to determine if the restitution award is within defendant's ability to pay. If defendant does not take the stand on his own behalf, it will be necessary for the State to establish in some other manner defendant's ability to pay restitution. The failure of the court to make any findings as to defendant's ability to pay the restitution award requires our reversal of the restitution order.

*Sausville*, 151 Vt. at 121, 557 A.2d at 503. The assumption of the decision is that the burden of proof on ability to pay must be placed on the prosecution and that the defendant cannot be required to provide information with respect to ability to pay restitution. Thus, according to the decision, unless the defendant volunteers the information, or the prosecutor can obtain it from another source, the defendant has an absolute defense to a restitution demand. Since the relevant information is frequently held only by the defendant, the decision is an impediment to many restitution orders.

¶ 33. In fact, the assumptions behind the decision are wrong. The statute does not place the burden of proof of ability to pay on the State; in fact, it reflects an expectation that at least some of the information will be provided by the defendant. See 13 V.S.A. § 7043(d)(2). Inability to pay should be viewed as an affirmative defense. For that reason, the decisions from appellate courts in other jurisdictions in similar circumstances have placed

the burden of proof to show inability to pay on the defendant. See, e.g., *King*, 204 P.3d at 601; *State v. Gill*, 2004 ND 137, ¶ 14, 681 N.W.2d 832. There is no indication that the *Sausville* Court ever considered these decisions or were even aware of them. We should follow these decisions and overrule *Sausville*.

¶ 34. This returns me to my opening point on *Morse*. We have no procedural regulation of restitution proceedings, and this has turned them into a crapshoot. Rules should establish pleading and disclosure requirements. Going into the hearing, the court and the defendant should know exactly what the State is seeking, its rationale, and what evidence will support it. Similarly, the court and the State should know what defense will be relied upon and what evidence will be presented by the defendant. The burdens of production and persuasion clearly should be specified. Adequate time should be reserved for the presentation of evidence. We should have clear preservation requirements.

¶ 35. Meanwhile, we should overrule *Sausville*, require preservation, place the burden of proof with respect to inability to pay on defendant, and affirm the trial court's decision in this case on ability to pay.

¶ 36. **Skoglund, J.,** dissenting. The majority holds that the court ordered restitution without making a finding that defendant has the ability to pay the restitution order as required by 13 V.S.A. § 7043(d)(2) (requiring the court to make findings with respect to the offender's current ability to pay restitution). It reverses and remands for "further proceedings concerning defendant's ability to pay." I cannot agree.

¶ 37. The court was aware that defendant's financial circumstances were at issue in a restitution proceeding and so indicated when it stated "[t]here was no evidence presented showing that Defendant does not have the ability to pay restitution." Further, the judgment order signed by the court contains a finding that defendant "has the current ability or reasonably foreseeable ability to make the payment(s)." Granted, the judgment order is preprinted. But, it again evidences the court's understanding that at issue in any restitution order is a defendant's ability to pay same. I would find these two statements sufficient to meet the statutory requirement for findings and affirm. To me, this result is particularly reasonable given that defendant never challenged the order by claiming an inability to pay the award, and, even more to the point, he never raised the issue of proper findings

when he was before the trial court. The fact that the State conceded error is irrelevant as I see none. I would affirm.