2015 VT 56











State v. Vezina (2014-021)

 

2015 VT 56

 

[Filed 10-Apr-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to notify
the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at:
Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any
errors in order that corrections may be made before this opinion goes to press.

 

 


 
 
 2015 VT 56
 
 


 


 
 
 No. 2014-021
 
 


 


 
 
 State of Vermont
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Windsor Unit,
 
 
 
 
  
 
 
 Criminal Division
 
 
 
 
  
 
 
  
 
 
 
 
 Robert Vezina
 
 
 October Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Karen
 R. Carroll, J.
 
 
 
 
  
 
 


Rhonda F. Sheffield, Windsor County Deputy State’s Attorney,
White River Junction, for 

  Plaintiff-Appellee.

 

Matthew F. Valerio, Defender General, and Marshall Pahl,
Appellate Defender, Montpelier, for

  Defendant-Appellant.

 

 

PRESENT:    Reiber, C.J., Dooley, Skoglund and
Robinson, JJ., and Morris, Supr. J. (Ret.), 

                    
Specially Assigned

 

 

¶ 1.            
ROBINSON, J.   Defendant Robert Vezina challenges a
restitution order for various items of musical equipment, arguing the trial
court erred by concluding that certain cymbals that had been stolen but then
returned in a degraded but functional condition were worthless; by awarding
restitution based on the subjective value of the cymbals to the victim; and by
ordering defendant to pay restitution without making a finding on his ability
to pay.  We affirm on the first two issues, and reverse and remand for
further proceedings concerning defendant’s ability to pay.

¶ 2.            
On September 20, 2013, defendant pleaded guilty in the Superior Court,
Windsor Unit, Criminal Division, to one count of petit larceny, 13 V.S.A.
§ 2502, in connection with the theft of seven pieces of musical equipment
in July 2012.  Defendant’s sentence included a restitution order.[1]  After a restitution hearing, the
trial court made the following findings, which are supported by substantial
evidence in the record.  The equipment’s owner collects rare drumming
equipment, much of which is no longer being produced.  The owner currently
has 538 pieces in his collection, including 133 Zildjian drum cymbals. 
The logo on a cymbal is an important component of its value.  Damage to
cymbals decreases their value.  The trial court summarized the status of
each of the seven items at issue:

·       
Sonor Force Boom Stand—[The owner] purchased this new stand for
$133 from a German company.  The company does not make this stand any
more.  A portion of this piece was returned to him, but pieces are
missing.

·       
Gibraltar Rod Cymbal Attachment—[The owner] purchased this item
new for $41.50.  This is a stand which is a mount for a cymbal.  This
was returned to [the owner] but is missing “toppers, sleeves and a wing nut.”

·       
A Series 10" Extra Thin Splash Zildjian Cymbal—[The owner]
purchased this cymbal new for $191.  It is a discontinued item.  This
was returned to [the owner], but in a damaged state.  This cymbal was
cleaned by Defendant with a harsh, abrasive cleaner and materials were rubbed
into the grooves of the cymbal.  This affects the value of the cymbal and
its performance.  This cymbal is presently at the Springfield Police
Department.

·       
A Series 6" Splash Custom Cymbal—[The owner] purchased this
cymbal new for $136.00.  This cymbal had a rare stamp on it.  This
stamp is not put on cymbals any more, so it has a value as a collector[’s]
item.  This cymbal was not returned to [the owner].

·       
A Series 10" EFX Cymbal—[The owner] purchased this cymbal
new for $198.00.  It is a rare, discontinued model which has not been made
since 2002.  This is missing and has not been returned to [the owner]
although he believes he has seen it at a music store.

·       
A Custom 10" Splash Cymbal—[The owner] purchased this cymbal
new for $206.  It has been returned to him, but in a damaged state. The
damage is [the same as described above in connection with the A Series 10”
Extra Thin Splash Zildjian Cymbal].

·       
19" Zildjian Custom Rock Crash—[The owner] purchased this
symbol new for $427.00.  It is [a] rare, discontinued cymbal.  It was
damaged similarly to the cymbals noted . .  . above.  In
addition, the logo has been polished off this cymbal and there are nicks,
dents, and edge damage to the cymbal.  Defendant agrees that he played
this cymbal and wiped off the label.

 

¶ 3.            
The court further found that the items which were damaged or stolen were
collector’s items, for which there is no “blue book” value as there is for
automobiles.  They were in “impeccable” condition before the larceny, as the
owner did not let others play or touch his drum equipment.  Because they
are no longer being produced, most of the items in the owner’s collection, when
they were intact, were probably more valuable than when the owner
originally purchased them.  The cymbals that were damaged are no longer
valuable collector’s items.  The total amount that the owner originally
paid for the equipment at issue was $1332.

¶ 4.            
Defendant produced evidence of various items of equipment for sale on
eBay for prices that were lower than the original purchase price for the
similar items at issue in the restitution hearing.  The trial court
concluded that a proposed replacement for the owner’s damaged A Custom 10"
Splash cymbal for $124.95 was the only one of the items identified by defendant
that is likely comparable to one of the items at issue in the restitution
hearing.

¶ 5.            
The trial court also found that “[t]here was no evidence presented
showing that Defendant does not have the ability to pay restitution.”

¶ 6.            
Based on these findings, the trial court calculated the owner’s material
loss as his original purchase price for the items, with the exception of the A
Custom 10" Splash cymbal, which the trial court valued at $124.95. 
The total restitution order was for $1251.

¶ 7.            
Defendant appealed, arguing that the trial court erred in awarding
restitution as if the cymbals that were returned, and still functional, had not
been returned; that the trial court improperly awarded restitution on the basis
of the cymbals’ subjective value to the owner rather than on the material loss
suffered; and that the trial court erred in ordering defendant to pay
restitution without making a finding that he has the ability to pay.

¶ 8.            
“The trial court has discretion in determining the amount of
restitution, and only a reasonable certainty of estimated loss is
required.”  State v. Driscoll, 2008 VT 101, ¶ 8, 184 Vt. 381,
964 A.2d 1172.  “We review restitution orders for an abuse of discretion,
and interpret controlling statutes de novo.”  State v. Gorton, 2014
VT 1, ¶ 8, 195 Vt. 460, 90 A.3d 901.

¶ 9.            
Vermont’s criminal-restitution statute mandates that restitution “be
considered in every case in which a victim of a crime . . . has
suffered a material loss.”  13 V.S.A. § 7043(a)(1).  “[M]aterial
loss means uninsured property loss, uninsured out-of-pocket monetary loss,
uninsured lost wages, and uninsured medical expenses.”  Id.
§ 7043(a)(2); see also State v. Jarvis, 146 Vt. 636, 638-39, 509
A.2d 1005, 1006 (1986) (noting that “only liquidated amounts which are easily
ascertained and measured are recoverable under the legislative [restitution]
scheme,” and that damages “that are not readily ascertainable,” including pain
and suffering and emotional trauma, are not recoverable).

¶ 10.         Generally,
diminution in fair market value is the proper measure of restitution for
material losses of personal property.  State v. Curtis, 140 Vt.
621, 622, 443 A.2d 454, 455 (1982) (per curiam); Driscoll, 2008 VT 101,
¶ 11 (affirming restitution order for market value that owner would have
received if two lost deer which escaped due to defendant’s actions had been
sold in an arm’s-length transaction).  However, we have affirmed a
restitution order based on the replacement cost of items that were damaged or
destroyed where the items were of modest cost and had no readily ascertainable
market value.  State v. Tetrault, 2012 VT 51, ¶ 13, 192 Vt.
616, 54 A.3d 146 (mem.) (“[Although] fair market
value is the proper measure of damages for items with a readily ascertainable
value, there is no ‘blue book’ for used toasters or microwaves. A victim of a
home invasion should not have to visit local thrift stores or pore through the
classifieds to determine the value of a used blender.”).  We have
recognized that because of the difficulty of valuation, some restitution awards
“necessarily involve[] an approximation.”  Driscoll, 2008 VT 101,
¶ 14.

¶ 11.         With
these principles in mind, we turn to defendant’s first challenge—that by
awarding the full purchase price of the used-but-returned items, the trial
court essentially concluded that the returned equipment had no value, even
though the returned cymbals were functional.  We conclude that the trial
court’s approach is supported by the evidence.

¶ 12.         The
boom stand and cymbal attachment were both only partially returned; pieces were
missing from both.[2] 
The boom stand is no longer manufactured, and with various pieces missing, it
does not have value as a collector’s item.  The total value ascribed to an
intact Gibraltar Rod Cymbal Attachment is only $41.50.  The trial court
did not abuse its discretion in declining to ascribe significant value to the
returned portions of either of these items.

¶ 13.         The
cymbals that were returned to the owner were functional as percussive
instruments, but the trial court found that their primary value did not lie in
their percussive qualities.  They were part of a collector’s set, and were
collector’s items in their own right.  Defendant’s erasure of the logos
greatly diminished their value.  Dirt filled the grooves of the
cymbals.  And the 19" Zildjian Custom Rock Crash had nicks, dents,
and edge damage.  Defendant presented no evidence of the value of
unlabeled, dirty, nicked, and dented cymbals.  Moreover, the trial court
expressly found that the value of the cymbals at the time of defendant’s
larceny was likely greater than the original purchase price upon which
the restitution order was based.  Given this evidence, the trial court’s
decision not to offset the value of the stolen equipment by their value at the
time they were returned was well within its discretion.

¶ 14.         Defendant
next argues that the trial court improperly awarded damages based on the
subjective value of the items to the owner.  Defendant points to the
owner’s testimony about the personal value to him of the items in question, and
statements by the trial court acknowledging the owner’s intangible loss. 
For example, the trial court noted, “It is clear to the Court that these items
mean a great deal to [the owner], not for their financial value, but due to his
love of drumming . . . . His testimony and demeanor on
the stand revealed a victim who, in his mind, can really never be made whole,
due to acts of Defendant.”  We agree that the subjective value, as opposed
to market value, of an item that has an ascertainable market value is not
generally a proper basis for restitution.  Curtis, 140 Vt. at 622,
443 A.2d at 455 (holding that general measure of restitution is market
value).  But we reject the suggestion that the trial court in this case
relied on the subjective value of the items to the owner in assessing
restitution.

¶ 15.         In
fashioning its restitution order, the trial court considered the original
purchase price of the items, the fact that the owner kept his equipment in mint
condition, and the fact that the values at the time of the larceny of nearly
all of the items at issue were likely higher than the original purchase
price.  These are all objective, market-based considerations.  During
the hearing, when the State sought to elicit testimony from the owner about his
level of passion for collecting and owning musical instruments, the trial court
sustained defendant’s objection on the ground that the owner’s pain and
suffering were not relevant considerations.  The fact that the items at
issue are collector’s items does not alter the analysis.  The trial court
did not focus solely on the value of the items to the owner, but on the value
of the items in the market more broadly—a value that reflects their status as
collectibles.  The fact that the trial court acknowledged the owner’s
personal sense of loss, and his personal devotion to the items at issue, does
not transform the character of its actual analysis.

¶ 16.         Nor
did the trial court extend our ruling in State v. Tetrault, as defendant
argues.  In Tetrault, we allowed a restitution award based on the
modest replacement cost of small household goods and appliances which were
damaged or destroyed when the defendant broke into a camp, even though the cost
of purchasing similar new items likely exceeded the value of the used goods
that had been in the cabin.  2012 VT 51, ¶ 13.  In this case,
the trial court discussed the possibility of a replacement-cost-based
restitution award, noting that restitution on a replacement-cost basis would
likely be higher than the restitution actually awarded in this case, but did
not base its restitution award on a replacement-cost analysis.  Although
the trial court discussed Tetrault in its opinion, it relied on a
traditional market-value analysis rather than a replacement-cost analysis in
determining the material loss suffered by the owner.  It considered the
original purchase price of the items at issue (itself a market-based figure),
as well as the items’ mint condition, and concluded that the value of the items
at issue had likely risen since the original purchase because the products had
been discontinued.  On this basis, the court concluded that the amount
that it ordered defendant to pay in its purchase price-based restitution order
was equal to or perhaps even lower than the actual market value of the victim’s
loss.[3] 
The court also adjusted the restitution award for the one item for which it was
persuaded that defendant’s contemporaneous market-based evidence—an eBay offer
for the same cymbals new—was probative.  Given these facts and the reality
that restitution orders often “necessarily
involve[] . . . approximation,” Driscoll, 2008 VT
101, ¶ 14, we find no error in the court’s calculation of the restitution
award.

¶ 17.         Finally,
defendant argues that the trial court erred by entering a restitution order
that ordered him to pay restitution immediately without first making a finding
on the defendant’s ability to pay.  The trial court noted in its written
decision that “[t]here was no evidence presented showing that Defendant does
not have the ability to pay restitution,” and the form restitution judgment
order signed by the trial court contains a preprinted finding that defendant
has the current or reasonably foreseeable ability to make the payments. 
By statute, “[i]n awarding restitution, the Court shall make findings with
respect to . . . [t]he offender’s current ability to pay
restitution, based on all financial information available to the Court.”
 13 V.S.A. § 7043(d)(2).  In this case, the record is devoid of
evidence to support a finding of current ability to pay the restitution
judgment.  The State joins with defendant in arguing that the trial court
erred on this point and requests that this Court remand the case to the trial
court in order to determine defendant’s ability to pay any restitution ordered.[4]  State v. Sausville, 151 Vt.
120, 121, 557 A.2d 502, 503 (1989) (citing Curtis, 140 Vt. at 623, 443
A.2d at 456) (rejecting argument that defendant in restitution case had a duty
to preserve issue of his inability to pay and stating that when “defendant does not take the stand on his own behalf, it
will be necessary for the State to establish in some other manner defendant’s
ability to pay restitution”).  Because the parties agree on this
point, we vacate the trial court’s order requiring defendant to pay the
restitution judgment immediately and remand for further proceedings concerning
defendant’s current ability to pay.

¶ 18.         Justice
Dooley, writing in dissent, post, ¶¶ 26-35, argues that notwithstanding
the State’s confession of error and request that we remand the case, we should
affirm.  He argues first that the defendant’s failure to raise the issue
of his ability to pay below precludes him from raising the issue on
appeal.  Post, ¶ 27.  He further suggests that defendant,
rather than the State, bears the burden of producing evidence concerning his
ability to pay, so that a restitution order can stand in the absence of any
evidence on the subject.  Post, ¶¶ 31-33.  In order to
reach this outcome, Justice Dooley urges us to overrule our decades-old
precedent in Sausville, which we recently reaffirmed in State v.
Kenvin, 2011 VT 123, ¶¶ 16-17, 191 Vt. 30, 38 A.3d 26 (reaffirming
that “[n]o preservation is required” on ability-to-pay issue and that “it is the State’s burden to establish defendant’s ability to pay if defendant does not offer evidence on
his own behalf”), overruled on other grounds by State v. Aubuchon,
2014 VT 12, ¶ 21, 195 Vt. 571, 90 A.3d 914.

¶ 19.         Justice
Skoglund, dissenting separately, does not outright advocate that we overrule
any precedents, but by upholding the trial court’s finding of ability to pay in
the absence of any evidence on the subject, her dissent implicitly endorses the
same shift in burden of proof, or at least burden of production, advocated by
Justice Dooley’s dissent.  Judge Morris, concurring separately, responds
to some points raised in Justice Dooley’s dissent.  

¶ 20.        
Given the circumstances of this appeal, we opt not to weigh in on
this subject at all.  We agree that this Court has the authority to affirm
the trial court’s judgment on grounds not relied upon below and not briefed to
us.  E.g., Fuller v. City of Rutland, 122 Vt. 284, 288, 171 A.2d 58, 60 (1961).  However,
given that the State has affirmatively confessed error and joined defendant’s
request for a remand to address the ability-to-pay issue, we decline the
dissent’s invitation to address our longstanding precedent—one way or the
other—without the benefit of any briefing or argument on the issue.[5]  When the State has confessed error,
this Court’s usual past practice has been to reverse and remand on the error
that has been confessed without discussion.[6]

¶ 21.        
The argument against affirming notwithstanding the State’s
concession and the lack of briefing on the issue is particularly strong in this
case because a necessary predicate to affirmance is overruling a longstanding,
and recently reaffirmed, precedent of this Court.  See O’Connor v. City
of Rutland, 172 Vt. 570, 570, 772 A.2d 551, 552 (2001) (mem.) (“[A]lthough
we are not ‘slavish adherents’ ” to doctrine of stare decisis, “neither do
we lightly overturn recent precedent”).  For these reasons, we decline to
address, in this case, the questions raised by Justice Dooley’s and Justice
Skoglund’s dissenting opinions and Judge Morris’s concurring opinion.

           
Reversed and remanded for a determination of defendant’s ability to pay
restitution; affirmed in all other respects.

 

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 

 

¶ 22.         MORRIS,
Supr. J. (Ret.), Specially Assigned, concurring.   I agree fully with
the majority’s holdings both with respect to the determination of the
restitution sum, and the remand for further proceedings on defendant’s ability
to pay restitution.  Given the State’s concession of error and the lack of
argument on the issue, I agree that the proper course is to remand and leave
for another day whether to overrule prior court rulings as advocated by Justice
Dooley’s dissent.  I write separately to clarify that the issue raised by
the dissent regarding how the court can adduce evidence on ability to pay may
be fully and fairly resolved in a manner consistent with the existing statutes,
and inherent judicial authority in the enforcement of lawful judgments,
including those for payment of restitution in criminal cases.

¶ 23.         The
statute clearly does not prohibit calling of the defendant to offer testimony
or other evidence to establish a record for finding as to ability to pay. 
To the contrary, the statute envisions that defendant will provide financial
information, specifically stating that the court shall make its findings as to
ability to pay “based on all financial information available to the Court, including
information provided by the offender.”  13 V.S.A. § 7043(d)(2)
(emphasis added).[7] 
Except as to perjury or false swearing, there are no incrimination issues, nor
any confrontation issues presented in the State either calling the defendant as
a witness, or providing documentary evidence as to ability to pay.  Further,
the court may directly inquire as to defendant’s financial status; this is akin
to requiring an affidavit for review of public defender eligibility, or
supplemental examination on the record to resolve questions as to financial
affidavit contents.  In fact, judges inquire all the time as to a
defendant’s employment, earnings, or financial status in sentencing
proceedings, judge-to-defendant, or in many and various financial-disclosure
and show-cause hearings in the civil division.  A defendant’s financial
circumstances are a routine subject of inquiry and disclosure in Pre-Sentence
Investigation interviews.  Such inquiry is fully consistent with the
statute and with the majority opinion in State v. Morse, 2014 VT 84, ¶¶
11-19, ___ Vt. ___, 106 A.3d 902, recognizing that the rules of evidence are
inapplicable, and less formal rules applicable, in restitution proceedings in
contrast to those applicable in criminal trials.[8]

¶ 24.         Justice
Dooley’s dissent urges that we presently overrule the holdings in Sausville,
151 Vt. 120, 557 A.2d 502,[9]
and State v. Kenvin, 2011 VT 123, 191 Vt. 30, 38 A.3d 26, overruled
on other grounds by State v. Aubuchon, 2014 VT 12, 195 Vt. 571, 90
A.3d 914.[10] 
In my assessment of the case circumstances, this is not necessary and is better
left to another appellate day.  In an appropriate case, a majority of this
Court may yet determine to expressly overrule Sausville and Kenvin
and establish inability to pay as an affirmative defense, as well as adopt
clearer standards for preservation.  Alternatively, the same result may be
achieved via judicial rulemaking pursuant to constitutional authority, or by
legislative enactment.  

¶ 25.         There
was scant, if any, treatment on the record below of the issues of allocation of
the burden of proof on ability to pay, or preservation of error.  The
State has confessed error, and we are without the benefit of reasoned development
and argument on appeal of these significant issues.  For these reasons, I
concur in the majority opinion, affirming the restitution judgment order and
remanding for further proceedings on the issue of defendant’s ability to pay
restitution.


 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Superior Judge, Specially
 Assigned
 
 


 

 

¶ 26.         DOOLEY,
J., dissenting.   I concurred in State v. Morse, 2014 VT
84, ¶¶ 25-29, ___ Vt. ___, 106 A.3d 902, because I believe that
determination and assessment of restitution awards is crippled by the absence
of effective procedural rules to regularize how restitution requests are
considered.  For similar reasons, I dissent here.[11]

¶ 27.          There
never was any question in this case as to what the victim claimed was stolen or
damaged and what value the victim assigned to the items involved.  The
police affidavit stated the items taken were valued at $1332.50. 
Defendant knew in detail what the victim was seeking because defense counsel
took the victim’s deposition.  The trial court’s findings state that the
victim was seeking restitution in that amount.  Despite an evidentiary
hearing that stretched over two days, and in which defendant testified, there
never was a claim by defendant that he was unable to pay the amount the State
sought.  Nor, after the State rested, did defendant move for an order of
no restitution because the State failed to put on any evidence of his ability
to pay the amount that the State sought, although defendant claims on appeal
that the State has the obligation to provide that evidence.  Facing a
record of defendant’s total silence on the issue, the court found that “[t]here
was no evidence presented showing that Defendant does not have the ability to
pay restitution.”  In its judgment, the court found defendant “has the
current ability or reasonably foreseeable ability to make the payment(s)” and
ordered immediate payment of $1251.45.  We should affirm that decision.

¶ 28.         I
acknowledge that the governing statute states that in awarding restitution “the
Court shall make findings with respect to . . . [t]he
offender’s current ability to pay restitution, based on all information
available to the Court, including information provided by the offender.” 
13 V.S.A. § 7043(d)(2); see also 28 V.S.A. § 252(b)(6) (providing
that court may impose restitution as condition of probation in amount “which
shall not exceed an amount the defendant can or will be able to pay”). 
The court did exactly what was required by the statute, given that there was no
information on ability to pay presented.

¶ 29.         The
problem, in my judgment, is not the statute but how this Court has interpreted
the statute.  In State v. Sausville, 151 Vt. 120, 557 A.2d 502
(1989), over a dissent that the defendant failed to preserve the issue, this
Court reversed a restitution award because the trial court made no findings
that the defendant had the ability to pay the restitution award.  Id.
151 Vt. at 121, 557 A.2d at 503.  The decision gives no explanation for
dispensing with preservation, except that the statute requires findings on the
defendant’s ability to pay.  When Sausville was decided, the
decision was unusual in not requiring preservation for a direct appeal to this
Court.  Now it is virtually unique.  Certainly the rationale that
preservation is not required where the issue involves a requirement to make
findings has been rejected.  See, e.g., State v. Cleary, 2003 VT 9,
¶¶ 16-17, 175 Vt. 142, 824 A.2d 509 (requiring preservation, absent plain
error, for direct appeal of Vermont Rule of Criminal Procedure 11 violations,
involving failure to render required advice and information to defendant and
lack of findings).  We should explicitly overrule Sausville on this
point.  See State v. King, 204 P.3d 585, 599 (Kan. 2009) (holding
that claim that trial court failed to make findings on ability to pay was not
raised below and therefore was not preserved for appeal).

¶ 30.         Even
if we do not overrule Sausville, we should distinguish it here. 
Unlike Sausville, this is a case in which defendant knew exactly the
amount of restitution the State and victim sought, and the court awarded an
amount close to the demand.  Also, unlike Sausville, there was an evidentiary
hearing with testimony, and defendant had the opportunity after the State
presented its testimony to claim that the State’s presentation was
deficient.  Further, defendant testified and could have addressed his
ability to pay the restitution judgment the State sought.  There is no
valid reason here for lack of preservation.

¶ 31.         I
recognize that in the absence of preservation, we would still reverse if we
found plain error.  I would not find plain error on this record. 
Defendant never has alleged that he does not have the ability to pay, relying
on the technicality that there is no finding of ability to pay.  In the
absence of such a claim, we cannot find prejudice to conclude there was plain
error.

¶ 32.         There
is a second, and more important, reason to overrule Sausville.  It
held:

Defendant’s failure to take the stand
does not obviate the court’s duty to determine if the restitution award is
within defendant’s ability to pay.  If defendant does not take the stand
on his own behalf, it will be necessary for the State to establish in some
other manner defendant’s ability to pay restitution.  The failure of the
court to make any findings as to defendant’s ability to pay the restitution
award requires our reversal of the restitution order.

Sausville,
151 Vt. at 121, 557 A.2d at 503.  The assumption of the decision is that
the burden of proof on ability to pay must be placed on the prosecution and
that the defendant cannot be required to provide information with respect to
ability to pay restitution.  Thus, according to the decision, unless the
defendant volunteers the information, or the prosecutor can obtain it from
another source, the defendant has an absolute defense to a restitution
demand.  Since the relevant information is frequently held only by the
defendant, the decision is an impediment to many restitution orders.

¶ 33.         In
fact, the assumptions behind the decision are wrong.  The statute does not
place the burden of proof of ability to pay on the State; in fact, it reflects
an expectation that at least some of the information will be provided by the
defendant.  See 13 V.S.A. § 7043(d)(2).  Inability to pay should
be viewed as an affirmative defense.  For that reason, the decisions from
appellate courts in other jurisdictions in similar circumstances have placed
the burden of proof to show inability to pay on the defendant.  See, e.g.,
King, 204 P.3d at 601; State v. Gill, 2004 ND 137, ¶ 14, 681
N.W.2d 832.  There is no indication that the Sausville Court ever
considered these decisions or were even aware of them.  We should follow
these decisions and overrule Sausville.

¶ 34.         This
returns me to my opening point on Morse.  We have no procedural
regulation of restitution proceedings, and this has turned them into a
crapshoot.  Rules should establish pleading and disclosure
requirements.  Going into the hearing, the court and the defendant should
know exactly what the State is seeking, its rationale, and what evidence will
support it.  Similarly, the court and the State should know what defense
will be relied upon and what evidence will be presented by the defendant. 
The burdens of production and persuasion clearly should be specified. 
Adequate time should be reserved for the presentation of evidence.  We
should have clear preservation requirements.

¶ 35.         Meanwhile,
we should overrule Sausville, require preservation, place the burden of
proof with respect to inability to pay on defendant, and affirm the trial
court’s decision in this case on ability to pay.


 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate Justice
 
 


 

 

¶ 36.         SKOGLUND,
J., dissenting.   The majority holds that the court ordered
restitution without making a finding that defendant has the ability to pay the
restitution order as required by 13 V.S.A. § 7043(d)(2) (requiring the
court to make findings with respect to the offender’s current ability to pay
restitution).  It reverses and remands for “further proceedings concerning
defendant’s ability to pay.”  I cannot agree.

¶ 37.         The
court was aware that defendant’s financial circumstances were at issue in a
restitution proceeding and so indicated when it when it stated “[t]here was no
evidence presented showing that Defendant does not have the ability to pay
restitution.”  Further, the judgment order signed by the court contains a
finding that defendant “has the current ability or reasonably foreseeable
ability to make the payment(s).”  Granted, the judgment order is
preprinted.  But, it again evidences the court’s understanding that at
issue in any restitution order is a defendant’s ability to pay same.  I
would find these two statements sufficient to meet the statutory requirement
for findings and affirm.  To me, this result is particularly reasonable given
that defendant never challenged the order by claiming an inability to pay the
award, and, even more to the point, he never raised the issue of proper
findings when he was before the trial court.  The fact that the State
conceded error is irrelevant as I see none.  I would affirm.


 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate Justice
 
 


 


















[1]
 Defendant entered his plea with the understanding and agreement that the
State would seek restitution in excess of $900.  13 V.S.A.
§ 7043(e)(3) (“An order of restitution may require the offender to pay
restitution for an offense for which the offender was not convicted if the offender
knowingly and voluntarily executes a plea agreement which provides that the
offender pay restitution for that offense.”).  Put differently, under the
plea agreement, defendant pleaded guilty only to petit larceny, but was subject
to a restitution order for grand larceny.  Compare id. § 2052,
with id. § 2051.





[2]
 Defendant disputes that a portion of the boom stand was taken but not
returned, but the trial court’s finding on this point is supported by the
owner’s testimony.





[3]
 This finding distinguishes this case from Tetrault, in which the
value of the used goods at issue undisputedly had fallen since the time of
purchase.





[4]
 Although the absence of evidence of defendant’s current ability to pay
arguably compromises the trial court’s order for immediate payment of the
restitution judgment, the ability-to-pay finding is not an essential finding to
the determination of the victim’s material loss.  Thus, the State’s
failure of proof on this point does not compromise the trial court’s judgment
against defendant for that loss.  See 13 V.S.A. § 7043(d)
(enumerating material loss, (d)(1), and ability to pay, (d)(2), as distinct
factors).





[5]  See, e.g., Harris
v. Town of Waltham, 158 Vt. 477, 485, 613 A.2d 696, 700 (1992) (Allen,
C.J., dissenting) (noting that “[a] principal reason for not considering issues not presented by the parties at trial or in their
briefs is the great risk of deciding important issues without hearing reasoned
arguments on both sides of a question”), Favreau v. Miller, 156 Vt. 222,
233, 591 A.2d 68, 75 (1991) (Dooley, J., dissenting) (“I would not decide
whether to abolish the control test.  We have not had the benefit of
briefing and argument on that issue since the parties agreed that control was
unnecessary and that is the law of this case.”).

 





[6]  See, e.g., State v. Campanelli,
142 Vt. 362, 363, 454 A.2d 1248, 1249 (1982) (“On brief and during oral
argument, the State confessed error in one of the
convictions . . . . We therefore reverse the judgment
and enter a judgment of acquittal on that count.”); Gilson v. Gilson,
139 Vt. 653, 653, 427 A.2d 383 (1981) (mem.) (one-line order reading: “Parties
having confessed error, cause reversed and
remanded . . . .”); State v. Sieglinger, 138 Vt.
654, 654, 423 A.2d 1220 (1980) (mem.) (one-line order reading: “The State
having confessed error in this cause, the judgment below is reversed and the
cause remanded.”); State v. Bliss, 133 Vt. 324, 325, 340 A.2d 76, 76
(1975) (per curiam) (“The State has confessed error, and a new trial must be
had.”); see also Lawson v. People, 165 P. 771, 771-72 (Colo. 1917)
(noting “it appears to have been the uniform practice of this court to reverse
the case upon [the attorney general’s] confession of error without giving it
further consideration,” and that court will only comment further in exceptional
circumstances when elaboration would be useful).





[7] 
This section of the statute was amended by the Legislature in 2005, adding the
word “all” preceding “financial” and substituting “available to the court,
including information provided by the offender” for the phrase “which the
defendant has filed with the court.”  2005, No. 51, § 5.





[8] 
Assuming that currently the State bears the burden of persuasion on the issue
of a defendant’s ability to pay restitution, and that inability to pay is not
an affirmative defense, I do not construe the dicta in State v. Sausville,
151 Vt. 120, 121, 557 A.2d 502, 503 (1989), as to the means of production of evidence—“If
defendant does not take the stand on his own behalf, it will be necessary for
the State to establish in some other manner defendant’s ability to pay
restitution”—to categorically prohibit the State or the court examining the
defendant, or the State securing of ability-to-pay evidence by other
means.  If this were indeed the case, defendants could simply thwart the
issuance of any restitution payment order by electing not to testify or
otherwise proffer evidence in restitution hearings, effectively “slamming the
door” on payment obligation, a result contrary to the intent, and as I see it,
the express provision of the statutes.

 





[9] 
In Sausville, this Court essentially rejected the State’s argument that
by entering into a plea agreement to pay restitution, the defendant waived his
ability to challenge ability to pay.  See also State v. Baker, 2010
VT 109, ¶ 8, 189 Vt. 543, 12 A.3d 545 (mem.) (citing Sausville as
holding that defendant does not waive issue of ability to pay by agreeing to
restitution in a plea agreement).

 





[10] 
Kenvin reversed a restitution payment order where the court failed to
make any findings as to the defendant’s ability to pay.  2011 VT 123,
¶¶ 16-17.  On the issue of preservation, as both Sausville and
Kenvin make clear, the bases for reversal were the failures of the trial
courts to make any findings at all as to ability to pay, contrary to the
requirement of the statute.





[11] 
I recognize that the State in this case has confessed error and not contested
defendant’s argument that the trial court erred with respect to the ability to
pay.  In doing so, the State has recognized that decisions of this Court
require that result.  We may, however, affirm on any ground, even if not
raised by the party whose position is favored by our action, and this dissent
urges that we overrule the governing precedent to reach that result.