2008 VT 101

## State of Vermont v. Benjamin D. Driscoll

[964 A.2d 1172]

No. 07-169

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed August 1, 2008

*William J. Porter*, Orange County State's Attorney, and *Eric Goldwarg*, Law Clerk (On the Brief), Chelsea, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Rebecca Turner*, Appellate Defender, and *Malcolm Tramm*, Law Clerk, Montpelier, for Defendant-Appellant.

¶ 1. **Dooley, J.** Today, we address a series of questions surrounding the loss of two Red Deer. Defendant was convicted of unlawful mischief and ordered to pay restitution to the deer owner in the amount of $5088. He appeals, arguing that the court erred in: (1) finding sufficient proof that the deer existed; (2) determining there was sufficient evidence of their value; and (3) rejecting defendant's argument that no restitution was due since the deer were derivative contraband. We disagree and affirm.

¶ 2. While perhaps unusual, the facts of this case are not disputed. The deer owner kept a large number of Fallow, Sika, and Red Deer within an eight-foot high fence on his property in Fairlee, Vermont. He originally obtained many of these deer in order to operate a hunting preserve, but prior to this incident, his recent business was to transport deer to other hunting preserves and to be paid for each one shot by a hunter. Before 2005, captive deer kept for hunting purposes were not required to be tagged and were not subject to the same record-keeping requirements applicable to deer kept for meat or other agricultural purposes. In 2005, however, the Legislature authorized the Agency of Agriculture, Food and Markets to "adopt rules necessary for the inventory, registration, tracking, and testing of deer," 6 V.S.A. § 1153(c), and the Agency promulgated the Rules Governing Captive Cervidae, 1A Code of Vermont Rules 20 022 023-1 to -7, which required that all captive deer, even those kept for hunting, be tagged and inventoried. The incident at issue here occurred in August 2006, well after the Captive Cervidae Rules were adopted. At the time, the owner was not in compliance with the new rules.

¶ 3. On August 17, 2006, the owner reported to the state police that part of the fence surrounding his property had been damaged

during the preceding weekend and that some of the animals had escaped. An investigation of the matter led the police to defendant, and he later confessed to his role in the loss of the deer, admitting that "he and some of his friends . . . decided to drive" to the owner's property. Defendant further admitted to having "hit the gate with the front of the car" in order to open it, after which he "proceeded to drive around inside the property." Once inside the fence, defendant mentioned that "he saw a lot of deer," which was "pretty cool." When asked why he drove into the gate, defendant said that he "hit the gate because he thought it was locked."

¶ 4. Six of the deer escaped through the damaged gate. Although searchers recovered four of the animals, two Red Deer remained missing. Defendant was charged with a single count of unlawful mischief, pled nolo contendere to the charge, and was sentenced to a suspended sentence of three to six months' imprisonment. After setting a hearing on restitution and taking evidence, the court ordered restitution in the amount of $5088.

¶ 5. The court went on to explain how it calculated the proper amount of restitution. Based on the owner's testimony, the court awarded $1088 for the damage to the gate. The owner also testified that the missing deer, both bulls, were valued according to the size of their antlers — $2000 each if the antlers were thirty inches or less and the deer was shot, and $3500 if the antlers were thirty-one inches or greater. According to the owner, the missing deer had antlers "well over" thirty inches and had no diseases or defects that would have altered their market price. Finally, he testified that he knew which deer had escaped, because each missing deer had a unique double brow tine not possessed by any of the remaining deer. The court adopted the lower value — $2000 per deer — because the court found that the owner had been tentative about whether he would have transported these deer for hunting.

¶ 6. The court also heard the testimony of the Vermont State Veterinarian, Dr. Cary Rude, who testified that the owner had not kept proper records of the animals he possessed. Dr. Rude confirmed the owner's assertion that his animals were free from disease.

¶ 7. On appeal, defendant argues that: (1) the evidence was inadequate to show either the value of the deer or that defendant had lost them; and (2) because the deer were contraband in which

the owner had no legitimate property interest, he could not receive restitution for their value.

■ ¶ 8. We turn first to defendant's contention that the State failed to show that the two deer existed. Under 28 V.S.A. § 252(b)(6), the sentencing court may require, as a condition of probation, that the offender "[m]ake restitution or reparation to the victim of his or her conduct . . . for the damage or injury which was sustained." Under 13 V.S.A. § 7043(a)(1), "[r]estitution shall be considered in every case in which a victim of a crime . . . has suffered a material loss." Material loss includes "uninsured property loss." *Id.* § 7043(a)(2). A "victim" is "a person who sustains physical, emotional or financial injury or death as a direct result of the commission or attempted commission of a crime." *Id.* § 5301(4). To support a restitution order, the State must establish both the amount of the victim's loss and that the defendant's acts caused the victim's loss. *State v. VanDusen*, 166 Vt. 240, 244, 691 A.2d 1053, 1055 (1997). The standard of proof is a preponderance of the evidence. *Id.* at 245, 691 A.2d at 1056. The trial court has discretion in determining the amount of restitution, and only a reasonable certainty of estimated loss is required. *Id.* at 245, 691 A.2d at 1055.

¶ 9. Defendant argues that the trial court abused its discretion in determining the amount of restitution, because "the State never presented evidence that could have allowed the District Court to conclude, with reasonable certainty, that [the two Red Deer] existed as part of [owner's] herd at the time of the accident." Defendant similarly argues that the owner's testimony was insufficient to prove the value of the deer. In effect, defendant asks us to decide that the owner's testimony, without more, cannot, as a matter of law, prove estimated loss to a reasonable certainty.

■ ¶ 10. We have no difficulty affirming the court's determination that the deer were missing and left the property as a result of defendant's damage to the gate. The owner testified that the deer were present prior to the time the gate was damaged. He relied upon the unique characteristic of these deer — the double brow tine — to identify them. Defendant challenges this testimony because the owner did not have a herd inventory and had not tagged the deer. These objections go to the weight of the evidence, which is the province of the trial court, and the court found that the deer existed and were lost despite defendant's argument to the contrary. We conclude that there was no error.

¶ 11. The value assigned by the court was based on the owner's testimony. The owner was in the business of selling the deer to hunters. The hunter paid if he or she shot the deer at a game preserve. The owner testified that, because of the size of the deer, he would charge $3500 for each. The court did not accept this valuation because the court found that the owner failed to prove that these particular deer would be taken to a game preserve for hunting. Accordingly, the court reduced the owner's valuation to $2000 per deer. In effect, the court awarded the owner the market value that he would have received if the deer were sold in an arms'-length transaction at the time they escaped.

¶ 12. By statute, the owner of personal property can testify to its value. See 12 V.S.A. § 1604. The deer were personal property. See *Hegarty v. Addison County Humane Soc'y*, 2004 VT 33, ¶¶ 8, 16, 176 Vt. 405, 848 A.2d 1139 (for the purposes of a conversion claim, animals that are not pets are personal property). When § 1604 applies, we have routinely affirmed valuations based solely or primarily on the owner's testimony of its value. See *Pion v. Bean*, 2003 VT 79, ¶ 30, 176 Vt. 1, 883 A.2d 1248; *Gazo v. Gazo*, 166 Vt. 434, 446, 697 A.2d 342, 349 (1997); *Klein v. Klein*, 150 Vt. 466, 469, 555 A.2d 382, 385 (1988).

¶ 13. Particularly relevant is *Hall v. Miller*, 143 Vt. 135, 465 A.2d 222 (1983), in which dairy farmers had purchased three brucellosis-infected heifers from the defendants and ultimately had to slaughter the infected cows and quarantine the remainder of their herd. At trial, the plaintiffs testified as to the value of their animals. This Court found their testimony to be sufficient proof of value, observing that the credibility of a witness is a matter for the finder of fact and that the trial court had "made lengthy and detailed findings, [adopting] the plaintiffs' proof over that of defendants." *Id.* at 145, 465 A.2d at 227. We explained that "[e]rror does not appear from the failure to adopt one side's findings" and affirmed the trial court's award of damages, holding that "[n]o error appears in the award . . . based on fair market value as testified to by plaintiffs." *Id.* at 145-46, 465 A.2d at 227-28; see also *Beech v. Am. Sur. Co. of N.Y.*, 51 P.2d 213, 215 (Idaho 1935) (court could value sheep based on the testimony of the owner who "is presumed in a way, to be familiar with its value by reason of inquiries, comparisons, purchases, and sales" (citation omitted)); *State v. Anderson*, 405 N.W.2d 527, 530 (Minn. Ct. App. 1987) (finding that the jury properly accepted the calves' owner's

testimony as to their value, "since the owner of property may testify as to its value" (quotation omitted)).

■ ¶ 14. We recognize that defendant would have an argument if the court had accepted the owner's valuation without adjustment. For the owner to name a value, he had to assume events that had not, in fact, occurred — the deer would have to be transported to a game preserve, and a hunter would have to find and shoot the deer. However, in this case, the court recognized that defendant might not have brought the deer to a preserve and reduced the valuation accordingly. That reduction necessarily involved an approximation, but the difficulty of valuation does not render the value reached invalid. See *Shahi v. Madden*, 2008 VT 25, ¶ 17, 183 Vt. 320, 949 A.2d 1022. We find no error in the valuation.

¶ 15. Defendant's next argument is that the victim cannot recover restitution, since the lost deer were derivative contraband. Defendant argues that the two deer were not tagged or monitored as required by the newly promulgated Captive Cervidae Rules. Consequently, defendant argues, the animals were derivative contraband, "items that are not inherently unlawful but become unlawful based upon the use(s) to which they have been put." *Boggs v. Merletti*, 987 F. Supp. 1, 10 (D.D.C. 1997) (mem.). Defendant directs us to a line of cases in other jurisdictions, holding that individuals from whom derivative contraband is confiscated are not entitled to compensation. The State responds that the cases defendant stresses are plainly distinguishable insofar as they apply only to civil-forfeiture matters and only when the victim has committed a felony or misdemeanor.

■ ¶ 16. The main problem with defendant's argument is that it is borrowed from another part of the law, the law of civil forfeiture, which is based on state statutes. In general, property is subject to forfeiture only if there is a statute that provides this remedy. See 1 D. Smith, Prosecution and Defense of Forfeiture Cases § 3.01, at 3-1 (2004). This limitation applies with particular force in the case of derivative contraband. *Id.* at 3-2. Defendant's argument is that owner had no property interest in the deer, because they were derivative contraband subject to forfeiture for violation of the Captive Cervidae Rules. This would be true, however, only if the Legislature created a forfeiture remedy for violation of the rules.

¶ 17. We can find no such remedy. Although the Legislature has provided for civil forfeiture in discrete situations, see 7 V.S.A. §§ 568, 572 (illegal liquor and vehicles conveying such liquor); 18 V.S.A. §§ 4241-4248 (regulated drugs and associated property), there is no general authorization for the forfeiture of derivative contraband. The authorization for the Captive Cervidae Rules is contained in 6 V.S.A. § 1153(c) ("The secretary shall adopt rules necessary for the inventory, registration, tracking, and testing of deer."), but the statute contains no designated remedy for violation of the rules. The specified general remedies for violation of rules in the chapter authorizing the Captive Cervidae Rules include civil penalties and injunctive relief. See *id.* § 1164(a), (b). The Captive Cervidae Rules themselves provide that "[a]ny person who violates a provision of these rules is subject to Administrative Penalties, 6 V.S.A. § 15, 16 & 17 and Civil Penalties, 6 V.S.A. § 1164." Captive Cervidae Rules § X(6), 1A Code of Vermont Rules 20 022 023-7. The statute does authorize the Secretary to condemn and order an animal destroyed, but only if the animal is "infected with or has been exposed to a contagious disease." 6 V.S.A. § 1159(a). There is no evidence that the deer at issue here had been exposed to or infected with a contagious disease sufficient to trigger this authorization.

¶ 18. The parties disagree about whether the deer in this case would be considered derivative contraband according to the general definition defendant has found in decisions from other jurisdictions. The short answer to those arguments is that they are irrelevant. Unless the Legislature provides that animals held in violation of the rules are subject to forfeiture, the concept has no application in this restitution proceeding. And indeed, the Legislature has not adopted such a provision. An owner of deer that have not been tagged or inventoried, in violation of the Captive Cervidae Rules, does not face forfeiture of the animals as a penalty.

¶ 19. We agree with defendant that the rule violation does have some relationship to the proof of the owner's right to restitution in this case and the amount that he is owed. If the owner had tagged the animals, they might have been easier to find and return. A written inventory would have helped the owner to provide clearer and more certain proof of the deer's existence. There is no indication, however, that the Legislature intended that such considerations would affect the availability of restitution. The

restitution statutes require only a direct causal relationship between the crime and the loss, see 13 V.S.A. § 5301(4), and the court found such a relationship in this case. In restitution cases, we have noted that "defenses such as contributory negligence or assumption of risk [are] not . . . available to the defendant," *State v. Jarvis*, 146 Vt. 636, 639, 509 A.2d 1005, 1007 (1986), and that "[c]ivil liability need not be established as a prerequisite to the requirement of restitution as a probation condition." *Id.* at 640, 509 A.2d at 1007. Here, the owner's failure to comply with the Captive Cervidae Rules does not create a forfeiture remedy when the Legislature has refused to do so.

*Affirmed.*