2010 VT 72

### STATE of Vermont v. Michael HUGHES

[5 A.3d 926]

No. 09-130

¶ 1. August 4, 2010. Late on a Saturday night in the parking lot of a Price Chopper grocery store, defendant Michael Hughes joined in the theft and destruction of three motorized shopping carts. Today he appeals a portion of his punishment and specifically requests that this Court vacate the Bennington District Court's order of joint and several restitution. We affirm.

¶ 2. The facts are straightforward and uncontested. On the evening of May 10, 2008, defendant and two companions visited a Price Chopper in Bennington, Vermont. While he was inside the store purchasing cigarettes, defendant's compan-

ions took two motorized shopping carts out of the store's vestibule and began driving around the parking lot. Upon exiting the store, defendant joined his friends, driving a third cart out of the store. They eventually drove onto a public street, over a pedestrian bridge, down a path, and into a river. Though the store was able to recover the carts from the river, they were all irreparably damaged when their electric motors contacted the water.

¶ 3. Defendant was subsequently charged with one count of grand larceny for stealing "electric shopping carts, having a value in excess of $900.00, in violation of 13 V.S.A. § 2501" and one count of unlawful mischief for damaging property with a value exceeding $1000, in violation of 13 V.S.A. § 3701(a). He eventually accepted a plea agreement, admitting guilt to the two charged offenses. At his plea hearing, defendant specifically pled guilty to taking the "electric shopping carts." The trial court sentenced him to sixteen to twenty-eight months. The court also ordered him to pay $3573 in restitution to the store under Vermont's restitution statute. 13 V.S.A. § 7043(a)(1) ("Restitution shall be considered in every case in which a victim of a crime ... has suffered a material loss [including an 'uninsured property loss,' *id.* § 7043(a)(2)].").

¶ 4. At the restitution hearing, defendant described his actions preceding the crime, explaining that he and his companions "decided to get on these mart carts. That's when we went to Price Chopper." After confirming that defendant and the other two individuals all drove the carts off the parking lot together, the trial court asked if all three were together "when ... the carts got driven down the path and into the water?" Defendant answered affirmatively. The court then went on: "You all were there, and you all were talking about putting them in the water; is that right?" To which defendant responded: "Yes, it was a joint decision." The court

then specifically found that defendant's acts were

> a childish lark that depended on mutual encouragement by all three of the participants. In the Court's view, one person didn't drive one cart off. They all got on carts, they all thought it was fun, and they all encouraged one another to drive the carts off the property, which was the beginning of the crime. . . . The discussions that occurred were concluded when, as [defendant] described it, they drove each of [the carts], all three together, down a path, and within seconds of one another, all the carts ended up in the river.

¶ 5. The State called the store's loss-prevention manager, a twenty-nine-year employee of Price Chopper, to testify to the replacement cost of the electric carts. He stated that each cart was worth $1191, making the total loss to the store $3573 for all three carts. The witness also explained that the store carried limited insurance: "Anything after $350,000 we're insured for. Anything before that, we take the loss on." At the close of the hearing, the court imposed "joint and several responsibility for the entire loss in this case" upon defendant individually.

¶ 6. Appealing this restitution order, defendant makes two claims. Primarily, he argues that Vermont's restitution statute does not permit joint and several liability. He contends the statute limits restitution to damage directly caused by a crime, and thus he can be liable only for harm to the cart he personally drove into the river. His second claim is that the State failed to meet its burden in proving that the store's losses were uninsured as required by the restitution statute. Specifically defendant suggests that the trial court erred by placing the burden of proving the store was not insured on him

and by improperly ignoring evidence that the store's form of self-insurance precluded restitution under the statute. We find no error in the trial court's rulings.

¶ 7. Vermont's restitution scheme is primarily laid out in 13 V.S.A. § 7043, which mandates that "[r]estitution . . . be considered in every case in which a victim of a crime . . . has suffered a material loss." Such victims include "a person who sustains . . . financial injury . . . as a direct result of the commission . . . of a crime." *Id.* § 5301(4); see also 1 V.S.A. § 128 (defining "person" as used in statutes to include corporations). Restitution is meant to compensate victims and not to punish defendants. See *State v. Bohannon*, 2010 VT 22, ¶ 6, 187 Vt. 410, 996 A.2d 196. We have noted, however, that our statute is "narrowly drawn," and we have limited recovery to those damages "directly linked to the crime." *State v. Forant*, 168 Vt. 217, 222-23, 719 A.2d 399, 402-03 (1998).

¶ 8. The determination of available restitution lies within the trial court's sound discretion. *State v. Driscoll*, 2008 VT 101, ¶ 8, 184 Vt. 381, 964 A.2d 1172; see 28 V.S.A. § 252 (noting that conditions of probation, including award and amount of restitution, lie within discretion of trial court). Defendant claims that the trial court abused this discretion when it found him jointly and severally liable for the store's total losses. While we have noted that "[r]estitution is wholly statutory," *Forant*, 168 Vt. at 224, 719 A.2d at 403, we similarly note that the absence of language permitting joint and several liability in the restitution statute does not make imposition of such liability unfounded. Indeed, because we agree with defendant that he must pay "only for the damage that [he] directly caused" we uphold the trial court's decision. See, e.g., *id.* at 222-23, 719 A.2d at 403 (concluding that "[a]n order of restitution must relate directly to the damage caused by the defendant's criminal act for which he was

convicted"); *State v. VanDusen* 166 Vt. 240, 244, 691 A.2d 1053, 1055 (1997) ("A restitution order may not include amounts resulting from conduct on which defendant was acquitted . . . or conduct that was not covered by defendant's conviction." (citation omitted)); *State v. Knapp*, 147 Vt. 56, 60, 509 A.2d 1010, 1012 (1986) ("An order of restitution must relate to the damage caused by the criminal conduct for which the defendant was convicted."). Here, the restitution order was directly tied to defendant's criminal conduct, the conduct to which he pled guilty.

¶ 9. Defendant was charged and pled guilty to stealing and destroying "electric shopping carts" in the plural. At his change of plea hearing, the trial court expressly asked: "And remind me of what you damaged on [May 10]?" to which defendant responded, "[s]hopping carts from Price Chopper. They were electric shopping carts." The trial court made extensive findings about the joint nature of the theft, noting that it "depended on mutual encouragement by all three of the participants." Defendant's testimony on the record supports the finding that he was a full participant in the caper that resulted in the destruction of all three carts. He admitted that he and his cohorts had gone to the grocery store with the express purpose of riding the carts. While he physically drove only one cart into the water, his actions, the terms of his indictment, and his admission to destroying the carts satisfies the direct link requirement and supports the trial court's order of restitution holding defendant liable for the cost of replacing all three carts.

¶ 10. Even putting this conclusion to one side, we recognize that a restitution order is more akin to a civil judgment for damages than a criminal proceeding resulting in punishment. Though civil liability "need not be established as a prerequisite" to issuing a restitution condition, *Driscoll*, 2008 VT 101, ¶ 19, like a civil suit, the purpose of restitution is to compensate the victim for the damages resulting from the defendant's criminal conduct. See *Bohannon*, 2010 VT 22, ¶ 6. A restitution order must contain findings on two points: sufficient documentation supporting the amount of material loss incurred by the victim and the defendant's ability to pay. 13 V.S.A. § 7043(c). Failure to pay restitution cannot result in a criminal charge for violation of probation, furlough, or parole. *Id.* § 7043(e)(1). The statutory structure permits enforcement of a restitution order "in the same manner as a civil judgment." *Id.* § 7043(i). We see no principled reason to limit restitution liability in cases such as this one, so long as the trial court finds a direct link between the damages awarded and the conduct covered by the defendant's conviction. Any concern of defendant that his companions may escape any liability for their part in the destruction is not before us. It is the responsibility of the State to bring about a fair result by pursuing restitution from the other defendants if possible, remembering that a defendant's ability to pay is a significant consideration.

¶ 11. Defendant's remaining argument on appeal revolves around the State's burden of proof for the losses attributable to the store. He essentially makes two points: first, that the trial court improperly shifted the burden of proof to him, requiring him to prove noninsurance; and second, that the State failed to prove that the store's "self-insurance" was *not* the equivalent of insurance coverage for the purposes of the restitution statute. As to the first claim, we find little merit. It is well settled that the burden lies on the State to prove that a loss attributable to a crime victim is uninsured. See, e.g., *Forant*, 168 Vt. at 222, 719 A.2d at 403 (noting "State must demonstrate . . . the amount of the victim's loss"); see also 13 V.S.A. § 7043(a)(1) (requiring restitution to be considered "in every case in which a

victim . . . has suffered a material loss"), § 7043(a)(2) (defining "material loss" as "uninsured property loss [or] uninsured out-of-pocket monetary loss"). Here the store's loss prevention expert testified to the value of the destroyed carts and submitted into evidence a price list documenting the replacement cost of one cart. We see no error in the court relying on the testimony of a long-time employee whose job was to assess and mitigate similar losses. See *Driscoll*, 2008 VT 101, ¶ 8 ("The trial court has discretion in determining the amount of restitution, and only a reasonable certainty of estimated loss is required."). The trial court's offhanded remark that it was "not sure that the State is required to prove noninsurance" is of no moment and does not diminish the strength of the evidence supporting the court's ultimate decision.

¶ 12. The second argument raises an interesting academic point, but is largely irrelevant in the context of this case. Defendant argues that "self-insurance is the functional equivalent to a liability insurance policy." Because the store saves money through a lower premium on its high-deductible policy, it effectively retains its own insurance fund for low-level, predictable losses. As such, defendant contends this "self-insured retention" covering the destroyed carts should render their replacement cost an insured loss and not compensable through restitution. We fail to follow this reasoning. Essentially, defendant argues that the store's decision to "pay out of pocket" for certain smaller losses should preclude them from receiving compensation through our restitution statute. Such a suggestion is directly contradicted by the statutory language, which defines compensable losses to include "uninsured property loss [or] uninsured out-of-pocket monetary loss." 13 V.S.A. § 7043(a)(2). Defendant's reliance on *State v. LeDuc*, No. 4455-8-03 CnCr (Vt. Dist. Ct. April 12, 2006), is likewise misplaced. In that case, the trial

court determined that the criminal defendant was not required to pay restitution for damaging a Burlington Police Department cruiser because the vehicle was insured through a self-insurance pool to which a number of Vermont municipalities contribute. That is plainly distinguishable from the matter before us where the store "takes the loss" on any damage under $350,000 and is not otherwise supported by any insurance collective.

*Affirmed.*