NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 68

No. 2016-376

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Criminal Division |
| | |
| Randell Blake | June Term, 2017 |

Howard E. Van Benthuysen, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.

Kevin A. Lumpkin and Justin A. Brown of Sheehey Furlong & Behm P.C., Burlington, for
  Amicus Curiae Safeco Insurance Company.


PRESENT:  Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.     **EATON, J.**  In December 2009, defendant Randell Blake was convicted of filing a false insurance claim in connection with a fire at his house that occurred on August 5, 2007. Subsequent to his criminal convictions, the trial court ordered defendant to pay restitution to his insurer, Safeco Insurance Company of America (Safeco), in the amount of $115,994.74. Defendant appeals the trial court's restitution order.  He argues that the order should be vacated because a general release, signed by Safeco in a related civil case, relieved him of any duty to pay it restitution.  He also argues that the order should be vacated because the trial court failed to make

findings regarding his ability to pay restitution. We affirm in part and remand for further proceedings concerning defendant's ability to pay.

¶ 2. Prior to his convictions and as a result of the fire, Safeco made several payments under the terms of defendant's homeowner's insurance policy. Safeco advanced $2000 to defendant in August 2007 as temporary living expenses, paid $78,494.74 in November 2007 to satisfy a mortgage loan on defendant's house, and paid $5500 in October 2009 for the demolition and debris removal. The fourth and final payment was $30,000 to an additional insured. Safeco issued this payment to the additional insured in January 2010, after defendant was convicted. In total, Safeco paid $115,994.74 in connection with the fire.

¶ 3. In 2008, after Safeco had issued several insurance payments, defendant initiated a civil suit against Safeco seeking additional insurance payments from the fire loss and Safeco counterclaimed. The parties resolved the civil suit in 2010 by exchanging mutual releases. The general release that Safeco signed states in relevant part that Safeco releases defendant from "any and all manner of action and actions, cause and causes of action, suits, damages, judgments, executions, claims for personal injuries, property damage and demands whatsoever" that Safeco "can, shall, or may have against [defendant]." The release references those "issues and claims for relief which were asserted or could have been asserted (1) pertaining to [defendant's] Safeco Homeowners Policy . . . and (2) in a civil action instituted by the undersigned styled Blake v. Safeco Insurance Co. of Am. and Kimiko Fitz."

¶ 4. In 2014, at the conclusion of a separate criminal proceeding involving defendant's co-defendant, the criminal division ordered defendant's co-defendant to pay $115,994.74 in restitution, representing the total loss to Safeco and the amount upon which the State and defendant's co-defendant agreed. The State then pursued a restitution claim against defendant. Defendant contested the State's claim for restitution, arguing he did not owe restitution to Safeco

2

in light of the exchanged releases.[1]   After initially granting defendant's motion to dismiss the restitution claim, the court suspended the order and the parties filed additional briefing.

¶ 5.    On April 8, 2016, the trial court issued an order denying defendant's motion to strike Safeco's right to restitution, noting its statutory duty to consider restitution.   While recognizing that the purpose of restitution is not to punish the defendant, the court distinguished civil remedies from restitution and emphasized the rehabilitative purpose of restitution.   It also noted that the victim is not a party to the prosecution and that the Legislature contemplated a victim's independent right to recover damages through a civil suit.   The court reasoned that due to these factors, and viewing restitution "in the context of criminal prosecution," a victim cannot waive nor extinguish his or her right to restitution by a release in a related civil case.   The court cited decisions from other jurisdictions that supported its decision and reasoning.

¶ 6.    The trial court held a restitution hearing on September 28, 2016 and issued a restitution order in the total amount of $115,734.74, deducting the small amount that defendant's co-defendant had already paid.   The court left blank sections of the order regarding defendant's ability to pay and methods of payment.   This appeal followed.

¶ 7.    On appeal, defendant argues that we should vacate the trial court's restitution order for two reasons.   First, he argues that Safeco's general release relieved him of any further liability, including restitution in this related criminal proceeding.   Second, he argues that the trial court failed to determine his ability to pay.   We begin with defendant's first argument, which requires us to interpret the scope of Vermont's restitution statute.

¶ 8.    Typically, we review restitution orders for an abuse of discretion.  State v. Gorton, 2014 VT 1, ¶ 8, 195 Vt. 460, 90 A.3d 901.   When we review issues of law or engage in statutory

---

[1]   The restitution hearing occurred nearly seven years after defendant's conviction.  It was scheduled and postponed several times before a status conference was held on September 23, 2015. At that conference, defendant raised the release as a defense.  This was the first time that attorneys representing defendant, Safeco, and the State learned of the existence of the release.

interpretation, however, we do so de novo. Id. "In construing statutes, our goal is to effect the legislative intent." Holmberg v. Brent, 161 Vt. 153, 155, 636 A.2d 333, 335 (1993). To serve this goal, "we first look at the plain, ordinary meaning of the statute." State v. Eldredge, 2006 VT 80, ¶ 7, 180 Vt. 278, 910 A.2d 816. "If the plain language is clear and unambiguous, we enforce the statute according to its terms." Id. "We look also to other relevant or related statutes for guidance, because a proper interpretation must further the entire statutory scheme." Holmberg, 161 Vt. at 155, 636 A.2d at 335; see also In re Judy Ann's Inc., 143 Vt. 228, 231, 464 A.2d 752, 754 (1983) (explaining that "totality of legislative action on a subject" is relevant to discerning legislative intent).

¶ 9.    We have also noted that "[i]n order to interpret [a] statute, we must determine its intent by analyzing not only its language, but also its purpose, effects and consequences." Estate of Frant v. Haystack Group, Inc., 162 Vt. 11, 14, 641 A.2d 765, 767 (1994). "To that end, laws relating to a particular subject 'should be construed together and in harmony if possible.' " Holmberg, 161 Vt. at 155, 636 A.2d at 335 (citation omitted). We will not interpret a single word or phrase in isolation from the entire statutory scheme. In re Judy Ann's, 143 Vt. at 231, 464 A.2d at 754. "Individual statutes . . . are to be construed with others in pari materia as parts of one system." Bud Crossman Plumbing & Heating v. Comm'r of Taxes, 142 Vt. 179, 185, 455 A.2d 799, 801 (1982) (emphasis in original).

¶ 10.    In relevant part, 13 V.S.A. § 7043 provides:

   (a)(1) Restitution shall be considered in every case in which a victim of a crime, as defined in subdivision 5301(4) of this title, has suffered a material loss.

   (2) For the purposes of this section, "material loss" means uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses.

   . . .

4

(g)(1) When restitution is requested but not ordered, the Court shall set forth on the record its reasons for not ordering restitution.

. . .

(h) Restitution ordered under this section shall not preclude a person from pursuing an independent civil action for all claims not covered by the restitution order.

Neither party disputes that Safeco is a victim under this statute. Thus, our task is to determine whether a general release of civil claims such as the one that Safeco signed binds a criminal court in its duty to "consider" restitution. Defendant argues that the court fulfills its statutory duty to "consider" restitution if the court inquires into restitution and, upon learning of a release, finds any further claim to be barred. To determine what is meant by "consider" in the context of the statute, we must first look to the statute's plain language.

¶ 11. "Consider" is not defined in the statute. When this Court must determine the ordinary meaning of "relevant terms [that] are not defined in the statute . . . we may look to dictionary definitions." State v. Perrault, 2017 VT 67, ¶ 13, ___Vt. ___, ___ A.3d ___. "Consider," in general, means 'to think about carefully" or "to think of especially with regard to taking some action." Consider Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/consider [https://perma.cc/M3M9-R4T5]. Although this definition implies that to "consider" requires the court to do more than give some thought to the matter of restitution, it does not answer the question of what "consider" means in the context of the restitution statute. However, the statute would lose significant meaning if a court were required to raise the theoretical possibility of restitution but could not impose restitution because a victim executed a release. See State v. Tierney, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980) (explaining that we must interpret statutes so as to give effect to "every word, clause and sentence").

¶ 12. Specifically, the only limitation on the trial court's duty to "consider" restitution involves the decision whether to order a hearing, not whether to order restitution. Subsection (c)(1)

states that "[u]nless the amount of restitution is agreed to by the parties at the time of sentencing, the Court shall set the matter for a restitution hearing." 13 V.S.A. § 7043(c)(1). First, we note that this language refers solely to "the parties," which, in a criminal matter concerning the defendant and the State, does not include the victim. Second, this language does not discharge the court's duty to consider whether to order restitution, nor does it limit the trial court's discretion in determining the amount of restitution. See State v. Driscoll, 2008 VT 101, ¶ 8, 184 Vt. 381, 964 A.2d 1172 ("The trial court has discretion in determining the amount of restitution."). Thus, while the plain language of the statute is not conclusive with respect to the court's duty to impose restitution, it does suggest that the statutory mandate to "consider" restitution "in every case" means something beyond what defendant argues it means, namely, that it can be a brief exercise that ends when the court finds a victim has bargained away restitution.

¶ 13. Additionally, because the legislative history does not provide any guidance in determining what the Legislature intended "consider" to mean, we turn to the statutory context to ascertain legislative intent. See Langrock v. Dep't of Taxes, 139 Vt. 108, 110, 423 A.2d 838, 839 (1980) (explaining that while we must give effect to statute's plain meaning, "if doubts exist 'the real meaning and purpose of the Legislature is to be sought after and . . . given effect' " (quotation omitted)).

¶ 14. Looking at the restitution statute in context clarifies what "consider" means and reinforces our conclusion that it requires the court to order restitution when restitution is appropriate or necessary. Cf. id. (noting that, if uncertain, legislative intent should be gathered from contextual sources). For example, restitution is a sentencing condition. See 28 V.S.A. § 252(6) (referring to restitution as "a condition of the sentence"); State v. Morse, 2014 VT 84, ¶ 14, 197 Vt. 495, 106 A.3d 902 ("Restitution is part of sentencing."). In sentencing, a trial court considers whether a condition is necessary or appropriate to carry out the goals of an offender's sentence. See State v. Thompson, 150 Vt. 640, 645, 556 A.2d 95, 99 (1989) (referring to

6

"appropriate" sentence as one that reflects nature of crime committed and is "consistent with the purposes of sentencing"); State v. Albarelli, 2016 VT 119, ¶ 47, ___Vt. ___, 159 A.3d 627 (noting that "necessary" probation conditions are those that "ensure that the offender will lead a law-abiding life"). As we have explained before, a court must impose a sentencing condition when the court, bound by its reasonable discretion, finds that it is necessary. See, e.g., State v. Lumumba, 2014 VT 85, ¶ 23, 197 Vt. 315, 104 A.3d 627 (" '[s]entences are imposed with regard to the situation and nature of the offender as well as according to the crime charged.' " (quotation omitted)); State v. Peck, 149 Vt. 617, 622, 547 A.2d 1329, 1333 (1988) (stating that when ordering probation conditions, a "court must enact conditions of probation" that are necessary to ensure that a convicted defendant does not reoffend (emphasis added)). It follows, therefore, that once a court, exercising its reasonable discretion, finds that restitution is necessary, it must impose restitution—just as it must impose other sentencing conditions once it makes a finding that those conditions are necessary.

¶ 15.    Defendant further argues that restitution is the victim's right and that the victim must therefore have the right to bargain it away. Although defendant is correct that restitution is focused on restoring the victim, we are not persuaded that restitution's restorative nature gives the victim or the defendant the power to displace the court's exercise of discretion in deciding whether to impose restitution. Our decisions regarding the role of restitution in the context of plea agreements, which, like civil releases, are contractual in nature, inform our conclusion that the court alone has the power to decide when restitution is necessary. See State v. Johnstone, 2013 VT 57, ¶ 11, 194 Vt. 230, 75 A.3d 642 (explaining that plea agreement is "contractual in nature"); Leo v. Hillman, 164 Vt. 94, 104-05, 665 A.2d 572, 579 (1995). Specifically, we have held that the parties to a restitution proceeding, the State and the defendant, cannot negotiate around restitution. See State v. Thomas, 2010 VT 107, ¶ 12, 189 Vt. 106, 14 A.3d 961 ("Irrespective of the prosecution's wishes, the court is required to consider restitution in every case."). In reaching

7

that conclusion, we emphasized the "statutory requirement" that the court "consider" restitution and noted that it would be unreasonable to expect that the court would be barred from ordering restitution merely because it was not part of the bargain between the State and the defendant. Id. Instead, "[t]he determination of available restitution lies within the trial court's sound discretion." State v. Hughes, 2010 VT 72, ¶ 8, 188 Vt. 595, 5 A.3d 926 (mem.). Thus, an agreement between the State and the defendant, the only two parties with standing in the criminal proceeding, cannot bind the court in its consideration of restitution, and it follows that a contract involving a nonparty, the victim, that was created to settle a separate civil proceeding, also cannot preclude the court's exercise of its discretion. See 13 V.S.A. § 5319 ("The rights of victims contained in this chapter do not entitle a victim to be a party in any proceeding.").

¶ 16.    Examining the purpose of restitution further supports our conclusion that only the court has the power to decide whether to order restitution. As defendant correctly notes, restitution and civil damages are both compensatory and focused on restoring a victim to his or her pre-harm status. See Hughes, 2010 VT 72, ¶ 10 (recognizing that restitution is akin "to a civil judgment for damages" and noting that both awards "compensate the victim"). But restitution, as part of sentencing and in terms of its effects and consequences, is not purely compensatory. Rather, a robust restitution scheme also involves, to some degree, the criminal goals of rehabilitation and deterrence, and we must interpret the restitution statute in such a way as to give effect to those objectives. We note at the outset of this analysis that the Legislature intended for restitution to be part of the criminal sentencing process. First, 13 V.S.A. § 7043 is located in the criminal title, in Chapter 221 on "Judgment, Sentence, and Execution," and part of Subchapter 2 on "Sentence and Commitment." Second, the statute contemplates a criminal restitution proceeding as separate from a civil proceeding. See id. § 7043(h) ("Restitution ordered . . . shall not preclude a person from pursuing an independent civil action."). Third, the statute specifically names restitution as a

sentencing condition: "An obligation to pay restitution is part of a criminal sentence." Id. § 7043(p).

¶ 17. The purposes of restitution become clear when we examine restitution within its criminal context. Defendant correctly notes that we have long held that punishment is not a purpose of restitution. See State v. Bohannon, 2010 VT 22, ¶ 6, 187 Vt. 410, 996 A.2d 196 ("The purpose of restitution is to compensate the victim, rather than to punish the defendant."). Broadly, however, the criminal system and sentencing involve goals beyond punishment, most notably rehabilitation and deterrence. See State v. Allen, 2010 VT 47, ¶ 14, 188 Vt. 559, 1 A.3d 1003 (mem.) (listing "legitimate goals of criminal justice," which include punishment, prevention, rehabilitation, and deterrence (quotation omitted)); see also In re Williams, 2014 VT 67, ¶ 36, 197 Vt. 39, 101 A.3d 151 ("This Court has identified four goals of sentencing: punishment, prevention, rehabilitation, and deterrence."); State v. Corliss, 168 Vt. 333, 342, 721 A.2d 438, 445 (1998) (considering "traditional common law factors such as punishment, deterrence, or rehabilitation."); State v. Loveland, 165 Vt. 418, 425, 648 A.2d 272, 277 (1996) ("[T]he court is free to consider the prospect of rehabilitation, and the safety of the community, in fashioning the sentence."). Thus, although restitution is not punishment, we have never held that restitution is not an aspect of rehabilitation or deterrence and to do so would overlook a major purpose of our criminal justice system.

¶ 18. The statutory separation between the criminal victim and the restitution proceeding further illustrates that restitution serves purposes beyond compensating the victim. For example, the restitution statute places the burden on the State rather than the victim to establish the victim's loss. Hughes, 2010 VT 72, ¶ 11. Although the victim may express views and has certain rights regarding notice, the court is not obliged to accommodate those views. See 13 V.S.A. § 5321. Additionally, the State, through the prosecuting attorney and not the victim, provides the defendant with a statement regarding the amount of restitution claimed. Id. § 7043(c)(2). Significantly, the

restitution statute also precludes the victim from directly receiving a restitution award or enforcing an order. First, the Restitution Unit, not the victim, receives all the funds ordered by restitution. Id. § 7043(k). Second, the Restitution Unit, not the victim, brings a civil action to enforce a restitution order. Id. § 7043(j). Allowing a victim to release a defendant from an obligation to pay restitution would frustrate the Restitution Unit's ability to collect from the defendant and erode the intended gap between the victim and the restitution proceeding. The gap, and the lack of control the victim has over the proceeding, is in place because restitution serves purposes beyond compensation, which is a remedy the victim is free to exclusively seek in a civil action.

¶ 19.    Similarly, the fact that this Court and the Legislature have created two distinct systems that serve different purposes illustrates that restitution has a noncompensatory aspect, which in turn demonstrates the Legislature's intention to separate civil damages from criminal restitution. Damages in a civil case heard by a jury, for instance, are determined by the jury and the court does not interfere but for plain prejudice. Larmay v. VanEtten, 129 Vt. 368, 374, 278 A.2d 736, 740 (1971). The tort plaintiff must prove "the extent and nature of [his or her] damages" and "that such damages are the direct, necessary, and probable result of the defendant's negligent act." Callan v. Hackett, 170 Vt. 609, 609, 749 A.2d 626, 628 (2000) (mem.). The plaintiff must also show, in some cases, that his or her own actions did not contribute to the extent of his or her loss. See Cartin v. Cont'l Homes of N.H., 134 Vt. 362, 367, 360 A.2d 96, 100 (1976) ("There is, of course, a general duty to mitigate damages."). In a restitution hearing, on the other hand, it is the trial judge's decision as to the amount of restitution. See Driscoll, 2008 VT 101, ¶ 8. The State has the less intensive burden of showing only that the uninsured losses are directly related to the crime and to offer evidence as to the defendant's ability to pay if the defendant does not do so on his or her own behalf. State v. Kenvin, 2011 VT 123, ¶¶ 9, 17, 191 Vt. 30, 38 A.3d 26. Additionally, the evidentiary standards are different. "Rules of Evidence do not apply in restitution

10

proceedings" and "there is no constitutional bar to admission of hearsay at restitution." Morse, 2014 VT 84, ¶¶ 13, 14.

¶ 20. Furthermore, unlike in a civil suit, the restitution available to a victim is limited to "uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses." 13 V.S.A. § 7043(a)(2). "Damages that are not readily ascertainable, such as pain and suffering, emotional trauma, loss of earning capacity, and wrongful death awards are not proper subjects of restitution . . . ." State v. Forant, 168 Vt. 217, 222, 719 A.2d 399, 402 (1998). By contrast, the civil system focuses primarily on compensation for wrongly injured persons, and we have said that "[o]ne of the principle purposes of the law of torts is to compensate people for injuries they sustain as a result of the negligent conduct of others." Hay v. Med. Ctr. Hosp. of Vt., 145 Vt. 533, 544, 496 A.2d 939, 945 (1985); see also Martineau v. Guertin, 170 Vt. 415, 420, 751 A.2d 776, 780 (2000) (referring to "Vermont's traditional tort system of compensation"). As such,

> [i]t would be inappropriate to allow the trial judge in sentencing proceedings to calculate the amount that should be awarded for uncertain, unliquidated losses and for pain and suffering. The evaluation of such losses is best left to the civil trial judge and to the collective wisdom of civil juries.

State v. Jarvis, 146 Vt. 636, 639, 509 A.2d 1005, 1007 (1986).

¶ 21. Indeed, we have stated that "[a] restitution order in a criminal case is not the same as, and is no substitute for, an award of damages." Id. at 640, 509 A.2d at 1007. Thus, the prosecution may pursue, or the court may order, restitution regardless of the potential for civil recovery. See State v. Kornell, 169 Vt. 637, 638, 741 A.2d 290, 291 (1999) (mem.) ("[T]he availability of civil remedies does not necessarily discharge the criminal court's duties nor disturb its jurisdiction."); Jarvis, 146 Vt. at 640, 509 A.2d at 1007 (stating that civil liability need not be established in order for court to order restitution). Likewise, a victim may pursue civil damages separate and distinct from any recovery received via a restitution order in a related criminal

11

proceeding, as long as the victim does not recover double damages. See 13 V.S.A. § 7043(h) ("Restitution ordered under this section shall not preclude a person from pursuing an independent civil action for all claims not covered by the restitution order."). When a plaintiff executes a civil release, he or she settles the civil issue of compensation. That same release, if it were to take effect in a criminal proceeding, would impede upon the rehabilitative and deterrent purposes of the criminal justice system. We do not give the victim the ability to dismiss a criminal charge, reject a plea agreement, or amend a defendant's sentence and, as it is the result of a criminal proceeding and part of the sentence, restitution is no exception. For this reason, even though the release in the instant case was signed after defendant's guilty plea and restitution may or may not have been contemplated by the parties at the time, it was never Safeco's right to waive restitution in connection with the criminal proceeding.

¶ 22.    Restitution and civil damages originate within separate systems, are not substitutes for each other, and a civil court's award of damages to a plaintiff does not discharge the criminal court's duty or authority to consider and order restitution. Therefore, a civil release has no bearing on the criminal court's duty and authority regarding restitution either. Reflected in this conclusion is the recognition that restitution, unlike civil damages, is not purely aimed at making the victim whole, but also involves additional functions of the criminal justice system such as rehabilitation and deterrence.

¶ 23.    This interpretation of our restitution statute is in line with how the vast majority of other states have interpreted their restitution statutes.[2] For instance, in State v. Applegate, 976 P.2d 936 (Kan. 1999), the defendant pled guilty to involuntary manslaughter and aggravated battery. Shortly thereafter, he was sentenced to serve jail time, was placed on probation, and

---

[2]  While we recognize that "[r]estitution is wholly statutory," Forant, 168 Vt. at 224, 719 A.2d at 403, and restitution statutes may vary from state to state, the near unanimity of state courts in finding the overarching principles of restitution cited in this opinion suggest that we can look to their interpretations for at least some guidance in reaching our own conclusion.

12

ordered to pay restitution. Subsequently, but prior to the criminal restitution hearing, the victim and defendant reached a settlement in the related civil tort action that released the defendant from "any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever." Id. at 937. The court noted the functions of rehabilitation and deterrence, as well as that "[r]estitution ordered in criminal proceedings and civil damages are separate and independent remedies . . . ." Id. The court held that despite the settlement, a sentencing judge "is not foreclosed from ordering restitution." Id. at 941; see also People v. Bernal, 123 Cal. Rptr. 2d 622, 627 (Cal. Ct. App. 2002) (noting that victim is not party to criminal proceeding and cannot release defendant's restitution obligation "any more than it could terminate his prison sentence."); State v. Hamilton, 935 P.2d 201, 205-06 (Idaho Ct. App. 1997) (coming to same conclusion while analyzing restitution statute that, like Vermont's restitution statute and those of many other states, contains no mention of purposes of restitution and requires its imposition when appropriate); State v. Breeden, 932 P.2d 936, 939 (Idaho Ct. App. 1997) ("A restitution requirement facilitates rehabilitation by confronting the defendant with the consequences of his or her criminal conduct . . . [r]estitution orders also promote public safety by exacting a 'price' for the crime, which may deter the defendant and others from such offenses."); People v. Bell, 741 N.W.2d 57, 60 (Mich. App. 2007) ("[T]he civil agreement . . . should not be construed as establishing a waiver of a mandatory provision of criminal law requiring the payment of restitution to the victims of crimes."); State v. Hval, 25 P.3d 958, 967 (Or. Ct. App. 2001) ("Inherent in the sound exercise of sentencing discretion is the trial court's consideration of the deterrent and rehabilitative effects of the sentence . . . [n]ecessarily, then, by making [a restitution award] a part of a defendant's sentence, the legislature implicitly requires consideration of the award's deterrent and rehabilitative effects.").[3] We agree with these other jurisdictions that restitution is the product of

---

[3] Some courts have referenced punishment as a goal of restitution. See, e.g., State v. McKinney, No. 03C01-9309-CR-00307, 1994 WL 592042, at *2 (Tenn. Crim. App. Oct. 26, 1994)

a criminal proceeding, in which the victim is not a party, and serves not only to compensate the victim, but also to rehabilitate the convicted defendant and deter others from similar offenses.

¶ 24.    Therefore, a civil settlement or release cannot entirely preclude a criminal restitution order because (1) the statutory obligation to impose restitution when necessary leaves no room for private parties to preclude a court from ordering it; (2) a release does not address the underlying purposes of restitution; and (3) the victim has no standing and is not a party in the restitution proceeding, and may seek a separate remedy in an action for civil damages.  In the instant case, defendant initiated a civil suit against Safeco for payment he claimed it owed him relating to the house fire and Safeco counterclaimed. The exchange of releases extinguished these competing civil claims.  The release Safeco signed did not, however, preclude an order of restitution in the related criminal proceeding.  We affirm the trial court's determination on this matter.

¶ 25.    The second issue we must address is whether the restitution order must be vacated for the trial court's failure to determine defendant's ability to pay.  The State agrees with defendant that the trial court erred in this respect and that the matter should be remanded for the relevant determinations.  Since the State concedes this point, we do not need to reach the substantive aspects of defendant's argument.  See, e.g., In re G.K., 147 Vt. 174, 179, 514 A.2d 1031, 1034 (1986) (suggesting that concession, if accepted, amounts to waiver of judicial review); see also State v. Vezina, 2015 VT 56, ¶ 17, 199 Vt. 175, 121 A.3d 1195 (reversing order requiring defendant to pay restitution immediately and remanding for further proceedings on defendant's current ability to

---

(referring to punishment as purpose of restitution in addition to compensation and rehabilitation); Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 702 (2d Cir. 2000) (stating that restitution serves functions of punishment).  Although this Court has interpreted Vermont's restitution statute as not encompassing the goal of punishment, we have not excluded other goals, such as rehabilitation and deterrence, as embedded in the restitution statute.  Those goals, as with many aspects of the criminal justice system, are indeed functions of restitution in Vermont.  The cases cited above reflect a nearly unanimous consensus among jurisdictions that restitution serves those purposes.

pay, "[b]ecause the parties agree on this point").  We reverse and remand the restitution order for determination of defendant's ability to pay.

Remanded for a determination of defendant's ability to pay restitution; affirmed in all other respects.

FOR THE COURT:

---

Associate Justice

15